# CASES DECIDED

AT THE

# MARCH TERM, 1889.

HOBBY, trustee, *v.* BUNCH *et al.*, and *vice versa.*

83    1
86  199

83    1
116  472

83    1
120  327

83    1
123  735

1. In ejectment no recovery can be had upon the title of a person from whom no demise is laid in the declaration.
2. A sheriff acquires no title to land by levying upon it and selling it; and if he did, his official deed made in pursuance of such sale would pass his title to the purchaser.
3. No recovery can be had upon the demise of a person who had conveyed away his whole title before the action was brought.
4. A declaration in ejectment setting out demises severally from two persons, is not amendable by engrafting upon one of these demises an equitable claim for money in favor of a third person against the defendants. The new matter is not germane to the original cause of action either as to parties or the subject-matter.
5. A recital of service made in a judgment foreclosing a mortgage upon realty, if silent as to the mode of service, is to be read in connection with the sheriff's return; and where the return sets out that the service was by leaving a copy at the defendant's residence, that mode and no other is the one shown by the record, or judgment roll, the whole of which must be taken together. Such mode being virtually no service, the judgment of foreclosure is void for lack of jurisdiction in the court to render it, and a purchaser under it is not protected.
6. However illegal the consideration of a promissory note may be, and whatsoever waivers of defences it may contain, it is too late to urge defences, either directly or collaterally, after final judgment has been recovered, that judgment being conclusive against any and all defences which the debtor could have made in the exercise of due diligence.

September 23, 1889.

V 83—1

Ejectment.   Title.   Pleadings.   Sheriffs.   Deeds. Amendment.   Equity.   Service.   Practice. , Mortgages.   Judgments.   Jurisdiction.   Promissory notes. Diligence.   Before Judge RONEY.   Columbia superior court.   September term, 1888.

On March 1st, 1888, an action of ejectment was brought on the demises of Wensley Hobby, trustee, and Bradford Ivy, sheriff, against Ike Jackson, tenant, for certain land in the county of Columbia, containing 140 acres and known as the Stanton place.   At the appearance term, Mrs. Mary A. Bunch and her children, all of whom were of full age, were made defendants, upon their application.   At the trial, it was admitted that both parties claimed under a common grantor, to wit, Wensley Hobby, trustee.   It was also admitted that Wm. H. Warren is administrator of T. D. Caswell, who died intestate ; that the yearly value of the land in controversy is $100 ; and that E. J. Ivy, deputy-sheriff of Columbia county, gave Mrs. Bunch a personal written notice on April 7th, 1884, of levy of the mortgage *fi. fa.* hereafter mentioned.

Plaintiff then introduced the following evidence :

1st. Execution in favor of Barrett & Caswell against Mrs. Bunch on judgment dated September 24th, 1883. Upon this execution were entries, which were also put in evidence, showing levy on the land in controversy as the property of Mrs. Bunch, October 3d, 1883, by E. J. Ivy, deputy-sheriff, and sale November 6th, 1883.

2d. Deed from E. J. Ivy, deputy-sheriff, to T. D. Caswell, of the land in controversy as having been sold to Caswell at the sheriff's sale above mentioned; the firm of Barrett & Caswell being stated in the deed to be composed of said T. D. Caswell and T. G. Barrett. This deed was recorded November 13th, 1883, and was accompanied by a written ratification and confirmation

of the same, dated October 30th, 1884, made by Bradford Ivy, as sheriff.

3d. A rule absolute at the suit of Hobby, trustee, against Mrs. Bunch, foreclosing a mortgage on the land in question given by Mrs. Bunch to said trustee, said rule absolute being dated March 25th, 1884, and obtained in the superior court of Columbia county.

4th. Execution issued upon said rule absolute with entries thereon, among which are entries of the levy of the *fi. fa.* on the property in question, as the property of Mrs. Bunch, on April 7th, by E. J. Ivy, deputy-sheriff, and sale of the same on May 6th, 1884, to T. D. Caswell as the highest bidder.

5th. Deed dated 6th of May, 1884, by E. J. Ivy, deputy-sheriff, to T. D. Caswell conveying the property under the sale last above mentioned. This deed was recorded upon the day it bears date, and is also accompanied by a written ratification and confirmation thereof dated October 30th, 1884, and signed by Bradford Ivy, sheriff.

Defendants offered in evidence the petition, rule *nisi* and rule absolute of the foreclosure of the mortgage of Hobby, trustee, against Mrs. Bunch. The petition asked for a foreclosure of the mortgage as having been given to secure two promissory notes of Mrs. Bunch to said trustee. It was filed September 25th, 1883, and rule *nisi* granted at the September term, 1883, of Columbia superior court. In the petition it is stated that Mrs. Bunch was, at the time of its filing, a resident of Richmond county. Upon the rule *nisi* is the following entry of service: "Served copy of this rule, etc. on the defendant, Mrs. M. A. Bunch, by leaving same at her residence, December 1st, 1883. E. J. Ivy, D. Shff." The rule absolute has already been sufficiently set forth above. This record was offered to show that no personal service was made on Mrs.

Bunch, and that service was made by the deputy-sheriff of Columbia county on a resident of Richmond county at her residence. It was objected to upon the grounds:

(1) Caswell, the purchaser at sheriff's sale, was not bound to look to the record as to service, but could rely on the rule absolute, which recites service on the defendant three months before the term at which it was granted. (It recites that service was made on the defendant, but does not state that the service was personal.)

(2) Defendants were barred by the judgment of foreclosure, not having moved to vacate or set it aside within three years of its rendition, or from the time of receiving actual knowledge of the same.

(3–4) Defendants could not in this proceeding collaterally attack the foreclosure, and were concluded by the sale, having stood by and seen the land sold without disclosing their title.

The objections were overruled and the record admitted. Defendants then offered record of the suit of Barrett & Caswell against Mrs. Bunch, wherein the judgment of September 24th, 1883, had been rendered. This record shows that the suit was upon a promissory note for $147.10, with interest and counsel fees, which note bore date April 13th, 1881, and was given for $2\frac{1}{10}$ tons of "Oriental Fertilizer." The note recites that the manufacturers' guaranteed analysis of the guano is admitted to have been attached to each package as required by and in conformity to existing laws of the State, when received by the maker of the note; and that it was expressly agreed, in consideration of the time granted and method allowed for paying for the fertilizer (cotton option at fifteen cents per pound), that said guano, as to conformity to said guaranteed analysis and its quality and effect on crops, was pur-

chased entirely at the purchaser's risk, waiving all
guarantees, and that said purchaser agreed never to
plead a failure of consideration on any ground what-
soever, and never to urge any defence to the debt, in
case of non-compliance, but actual payment of the
amount sued.   Personal service was made upon Mrs.
Bunch on the 8th day of March, 1883, and judgment
by default rendered September 24th, 1883.   In connec-
tion with this record, defendants introduced copy of the
original note already sufficiently stated, and a copy of
the rules and regulations prescribed by the commis-
sioner of agriculture of Georgia as to fertilizers for the
season of 1880–81.   Also a list of fertilizers inspected,
analyzed and admitted to sale in said State during the
season of 1880–81, issued June 8th, 1881.   "Oriental
Acid Phosphate," sold by and inspected for Barrett &
Caswell, was upon the list mentioned.   These docu-
ments were admitted over objection.

Defendants then offered deed dated June 24th, 1881,
made by Wensley Hobby, trustee, party of the first
part, and "Mary A. Bunch  .  .  .  .  and her chil-
dren as the party of the second part."   This deed con-
veys the property in dispute, and recites that it is made
in consideration of $1,000, payable $700 cash and two
promissory notes of Mrs. Bunch for $150 each, payable
respectively March 1st, 1882, and March 1st, 1883, and
to be secured by mortgage of the premises sold to be
given by the said Mrs. Bunch.   The conveyance is "to
the party of the second part, their heirs and assigns",
and the *habendum* is " to the party of the second part,
heirs and assigns, forever in fee simple, to their own
proper use, benefit and behoof, and with power to said
Mary A. Bunch to mortgage the same for the securing
of the said unpaid part of the purchase money."   This
deed was recorded October 23d, 1884.   It was objected
to on the grounds that it was really a deed in fee to
Mrs. Bunch, and that it was recorded after the sale

to Caswell on November 8th, 1883, and May 6th, 1884, Caswell being a purchaser without notice thereof. The objections were overruled and the deed admitted, and defendants closed. Plaintiff then introduced the mortgage from Mrs. Bunch to Hobby, trustee, dated June 24th, 1881, and recorded August 31st, 1884; also the notes secured by the mortgage. It is sufficient to say, as to the mortgage, that it is given by Mrs. Bunch alone, and recites that it is given to secure the payment of the two promissory notes before mentioned, made by Mrs. Bunch for the balance of the purchase money for the tract of land now in controversy. The mortgage covers said land, and the notes it was given to secure are the two notes for $150 each heretofore mentioned.

Plaintiff then introduced E. J. Ivy who testified that he was the deputy-sheriff of Columbia county in 1883 and 1884; that Mrs. Bunch was then in possession of the Stanton place, and had been for some years; saw her and her daughter when he went there several times to serve papers; Caswell purchased at both sales and paid his money, and his last payment paid off the mortgage *fi. fa.*

Plaintiff announced that he would not rely on the deed of November 6th, 1883, based on the judgment of September 24th, 1883, as a muniment of title against any of defendants save Mrs. Bunch, and thereupon moved to rule out the record of said judgment and the rules, regulations and list of the department of agriculture, previously admitted. Defendants objected to plaintiff being allowed to give such direction to the case, and objected to the motion to rule out on the ground that, by the evidence as it then stood, it appeared as an uncontested fact that the judgment of September 24th, 1883, was based on an illegal, void and criminal cause of action, and was therefore null and void, and plaintiff ought not to be heard on his motion

to exclude and thereby derive benefit from the judgment as a valid one. The motion to rule out was sustained.

Plaintiff then moved to amend his declaration so as to pray that, if he had no title to the land in controversy, he should have verdict and decree for the amount paid out by him as the purchaser at the sheriff's sale under mortgage foreclosure, and that the land be sold to satisfy the same. The amendment was objected to on the grounds that it introduced a new cause of action, and that an action of ejectment could not be so amended. These objections were sustained.

The evidence being concluded, counsel for plaintiff presented to the court his requests to charge as follows:

(1) The deed from Hobby, trustee, to Mrs. Bunch and her children, the names of the children not being mentioned therein, conveys an absolute fee to Mrs. Bunch.

(2) The judgment of Barrett & Caswell is conclusive on Mrs. Bunch, and the sheriff's sale on *fi. fa.* thereunder conveyed the interest of Mrs. Bunch in the Stanton place to Caswell, whose estate is now the owner of her interest, whatever it may be.

(3) If the deed of Hobby, trustee, conveyed the entire fee to Mrs. Bunch, the sale by the sheriff of November 6th, 1883, to Caswell conveyed the entire tract to him.

(4) Mrs. Bunch is now barred by the statute of limitations from attacking the judgment of September 1883.

(5) The purchaser at sheriff's sale under a mortgage *fi. fa.* will be protected when the rule absolute shows on its face that the rule *nisi* was served on the mortgagor according to law.

(6) Caswell was only bound by recitals on the face of the record as to Mrs. Bunch's title, and was not affected by a record, subsequent to his own deeds from

the sheriff, of a deed to her and her children not recorded in time.

(7) Every presumption is in favor of an innocent purchaser. He is not bound to look beyond a judgment if rendered in a court of general jurisdiction; and a plaintiff in *fi. fa.* purchasing without notice is not affected by irregularities in bringing the property to sale.

(8) If nothing appears upon the face of the record of foreclosure except a return of service at the residence of the mortgagor of the rule *nisi,* this will not defeat title of a purchaser without notice thereof, if the rule absolute shows on its face that service was made in conformity to law.

(9) If the record shows service of the rule *nisi* by leaving it at the house of the mortgagor, it can be set aside on notice of defendant before the rights of others have become vested; but if the record also shows that between the date of such service and the filing of the present suit three years have intervened, and defendant had personal notice of the levy and made no such motion, it cannot be set aside as against a purchaser at the sale in good faith without notice thereof, and the mortgagor is now barred.

The court ruled adversely to the positions of plaintiff as to all the charges requested except the second and fourth, and these he sustained. Thereupon, without the jury being charged, a verdict was taken by counsel according to their understanding of the rulings made, both sides being dissatisfied. Said verdict was in favor of plaintiff for an undivided one eighth interest in fee in the premises in controversy, to wit, the interest of Mrs. Mary A. Bunch, the defendant therein, and in favor of the other defendants against plaintiff. Judgment was entered accordingly.

It was agreed that either party or both might have the right to move for a new trial or except directly to the

Supreme Court; and both parties excepted; the plaintiff, "to the verdict rendered, and several rulings made, as hereinbefore set forth, adverse to the plaintiff"; defendants, "to the ruling of the court that plaintiff could give direction to said cause as is aforesaid, and to the ruling and decision of said court granting plaintiff's motion to rule out evidence as aforesaid."

F. H. MILLER and W. K. MILLER, for plaintiff.

SALEM DUTCHER, for defendant.

BLECKLEY, Chief Justice.

1. As there was no demise in the declaration from Caswell, his heirs or administrator, there could be no recovery by the plaintiff below on his title; therefore all contest over his purchase at either of the sheriff's sales was irrelevant and nugatory. Showing title in Caswell would not tend to support the action, but would be the certain defeat of it, since it would negative the right of all other persons, save his heirs or legal representatives, to demise the premises to John Doe.

2. It surely cannot be necessary to enter into any course of reasoning, or cite authority, to establish the proposition that no recovery can be had in ejectment on a demise from the sheriff who has seized land and sold it by virtue of judgments and writs of *fieri facias* against another person. The sheriff acquires no title to land by levying upon it; and there is no evidence in the record that this sheriff ever acquired or had title otherwise. But suppose he obtained title by levying upon the land, he sold twice and made two deeds to Caswell, and both these deeds were introduced in evidence by the plaintiff. After this, how could it be imagined that a recovery could be had upon a demise from the sheriff?

3. There could be no recovery on the demise from Hobby, trustee, because the deed from him to Mrs.

Bunch and her children passed title out of him, whether Mrs. Bunch alone acquired it, or whether it passed to her and her children jointly as tenants in common. We think, however, as her children were in being at the time the deed was executed, that she took only an undivided share, and that each of them took one share also. *Ewing* v. *Shropshire*, 80 *Ga.* 374. So far, therefore, from failing to recover as much land as the plaintiff was entitled to, the recovery, being for one eighth of the premises, was more than the state of the pleadings and the evidence under them warranted. In strict law, nothing whatever was recoverable upon any demise or all the demises in the declaration.

4. The refusal of the court to allow the proposed equitable matter to be engrafted upon the action of ejectment by amendment, is conclusively justified by the state of the pleadings as they stood when the amendment was offered. The proposed amendment was entirely too remote from the original cause of action and the parties thereto to be germane to the controversy set out in the declaration. If the administrator of Caswell has any right to recover from the Bunches money paid by his intestate for their benefit but not at their request, or to be subrogated to the rights of Hobby as plaintiff in *fi. fa.*, let him bring a direct action therefor, and not present this claim as a mere weld on an action of ejectment brought to recover the land upon demises from other persons to John Doe. We think the two causes of action are wholly separate and distinct, not only as to subject-matter but as to the parties mentioned in the pleadings.

5. What we have said is quite sufficient to dispose of the bill of exceptions brought by the plaintiff; but as another question of considerable interest was argued, and as we have investigated it laboriously and somewhat thoroughly, we will express our opinion upon it.

That question is, whether the judgment foreclosing the mortgage made by Mrs. Bunch to Hobby, trustee, was or was not void as against Caswell, who purchased the property at a sheriff's sale made under and by virtue of an execution founded on the judgment. The judgment of foreclosure recites service of the rule *nisi* in these terms :

"And it appearing that a copy of said rule *nisi* has been served on said defendant three months before the term of this court, and that said defendant has shown no cause to the contrary, and still neglects and refuses to pay the amount due on said mortgage, it is therefore adjudged by the court that the equity of redemption in and to said mortgaged premises be and the same is hereby barred and forever foreclosed. And it is further ordered and adjudged that said plaintiff do recover," etc.

The sheriff's return of service, upon the rule *nisi* to foreclose the mortgage, is in these words :

"Served a copy of the within rule, etc. upon the defendant, Mrs M. A Bunch, by leaving same at her residence, December 21st, 1883. E. J. Ivy, D. Sheriff."

Judgment was rendered March 25th, 1884, and the sheriff's return is a part of the record of the proceeding to foreclose which resulted in the judgment. The statute regulating the foreclosure of mortgages upon realty (code, §3962), provides that the rule "shall be published once a month for four months, or served upon the mortgagor or his special agent or attorney at least three months previous to the time at which the money is directed to be paid into court." Only the sheriff or his deputy can serve the rule. *Falvey* v. *Jones*, 80 *Ga.* 130. In this State, service of legal process, when made by the sheriff or deputy-sheriff, is evidenced by an official return. Such is the uniform practice, and there is no provision of law for verifying official service by any other means. It follows that when the judgment recites service and there is a return, the recital is always based upon the return, and the two are to be construed together. This recital, therefore, being silent as to the

mode of service, and the return showing that the mode was not personal service but by leaving a copy at the defendant's residence, the conclusion results that the rule was served as the return specifies, and not other-wise. All this appeared and still appears on the face of the record, that is, on what is termed in some juris-dictions, "the judgment-roll." But the only service which the sheriff could legally make, and the only ser-vice effected less than four months before the term of court at which the judgment of foreclosure was rendered which could be valid, would be personal service. Service by leaving a copy at the defendant's residence is unau-thorized and insufficient. *Dykes* v. *McClung*, 74 *Ga.* 382; *Meeks* v. *Johnson*, 75 *Ga.* 630. Due service is no less requisite to give the court jurisdiction of the person and the subject-matter in foreclosure proceedings than in ordinary personal actions. In Moore *v.* Starks, 1 Ohio St. 389, which was such a proceeding, it was held—no doubt correctly—that before the court can act, it is nec-essary that it should acquire jurisdiction over the person of the defendant as in any other adversary proceedings. It was held that jurisdiction over both the person and the thing is absolutely requisite to the validity of the judgment. In ordinary actions, "jurisdiction over the defendant is obtained by his voluntary appearance in the action, or by the service of process. . . . If a de-fendant neither appears nor is served with process, a judgment against him is void." Freeman on Void Judi-cial Sales, §5. Where there has been no service, the judgment is a nullity. *Parker* v. *Jennings*, 26 *Ga.* 140.

There is a well-founded distinction between no ser-vice and irregular or defective service, the latter render-ing the judgment voidable only. In this case the so-called service was, legally speaking, none at all; for as the only mode (except by publication for four months) which our law recognizes as any service whatever of a

rule *nisi* to foreclose a mortgage, is personal.service, the leaving of a copy of the rule at the defendant's residence can be no more effectual than the leaving of it at the residence of any other person.   Were the sheriff to leave it at his own residence and return that he had done so and thereby served the defendant, the service would be quite as good as that which was returned in this instance.   That the return is a part of the record and must be noticed even by a purchaser, in connection with the judgment reciting service, is well-established by respectable authority.   Settlemier *v.* Sullivan, 97 U. S. 444; Botsford *v.* O'Connor, 57 Ill. 73; Pollard *v.* Waggener, 13 Wisc. 569; 1 Herm. Estop. and *Res Adjudicata*, §362; Freem. Judgts. §125; and see Wade on Notice, §§1361 to 1382.   There is nothing contrary to this position in *Hightower* v. *Williams*, 38 *Ga.* 597, in which case the recital in the judgment showed due service, whether construed alone or in connection with the rest of the record.   The effort was, not to supplement, explain and qualify by other parts of the same record, but to overcome the recital by extrinsic testimony. Here, on the contrary, there is no resort to extrinsic evidence, but only an application of the rule that the whole record or judgment-roll is to be·read together.

6. The bill of exceptions brought by the defendants below, which goes only to rulings of the court touching the exclusion of evidence previously received, is without the shadow of merit; for although the maker of a note given for the purchase money of fertilizers cannot waive the right to set up as a defence to an action upon the note the illegality of the contract for lack of inspection of the fertilizers, or for lack of any other requisite to render the sale and purchase compatible with the law of the land, yet by failure to repudiate the waiver and set up and establish the illegality as a defence to that action, the right to raise the question is

forever gone when final judgment has been rendered. The judgment is conclusive upon all defences which could have been presented in the exercise of due diligence. The court did right to rule out and withdraw from the jury all evidence upon that subject. Indeed none of it ought to have been admitted.

<i>Judgment on both bills of exceptions affirmed.</i>