## MUIR v. MORRIS et al.

### (Circuit Court of Appeals, Ninth Circuit. October 4, 1920.)

### No. 3467.

Judgment ⬤⟞828(1)—At law on merits bar to subsequent suit in equity on same facts.

    A suit in equity in a federal court *held* barred by judgment of a state court, affirmed by the Supreme Court of the state, in an action at law between the same parties based on the same facts, and where the evidence was substantially the same.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by Jane W. Muir, executrix of the will of William T. Muir, deceased, against James H. Morris and Fred S. Morris, partners as Morris Bros., James H. Morris, and Fred S. Morris. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 257 Fed. 150.

Wm. D. Fenton and James E. Fenton, both of Portland, Or., for appellant.

Teal, Minor & Winfree, Dolph, Mallory, Simon & Gearin, and W. C. Bristol, all of Portland, Or., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The appellant sought by this suit a decree declaring that in and prior to the month of June, 1905, the appellees held the legal title to 1,000 shares of the capital stock of the Oregon Water Power & Railway Company, in trust for the appellant's testate, William T. Muir, and continued to hold the stock for the latter and his successors in interest until about April 27, 1906, when they sold all of the stock of the power and railway company, including the 1,000 shares so held in trust by them, at the price of $65 a share, and that after such sale the appellees held the sum of $65,000 for Muir until his death on the 4th day of November, 1911, and that ever since the date last mentioned the appellees have held and now hold the said money in trust for the appellant herein as representative of said William T. Muir, deceased, for which amount, with interest and costs of suit, the appellant prayed judgment.

The defendants to the suit interposed various defenses, among which was one setting up in bar an action brought by Muir June 24, 1911, in a state court of Oregon, in which action the present appellant was substituted as executrix of the estate of the deceased, Muir, which action resulted in a judgment of the trial court granting a motion made by the defendants thereto (who are the present appellees) for a nonsuit and dismissing the action, which judgment was subsequently affirmed by the Supreme Court of the state on appeal thereto. Muir v. Morris, 80 Or. 378, 154 Pac. 117, 157 Pac. 785. Thereafter a petition for a rehearing of the case was presented to the court in banc

on consideration of which petition the court states (80 Or. at page 393, 157 Pac. 785) that—

"In response to an urgent petition for a rehearing the entire record has again been examined."

Such re-examination resulted in a further statement by that court of the facts of the case (which appear to have been also quite fully stated in its original opinion), and in a further opinion of the court denying the rehearing and again affirming the judgment of the trial court dismissing the action. It clearly appears, from those opinions that the merits of the case were involved in the motion for a nonsuit made by the defendants at the close of the testimony for the plaintiff at the trial.

That case was, as has been said, begun by William T. Muir, and, he having died within a few months thereafter, the present appellant was substituted in his stead in the action in the state court. The facts calling for and receiving the judgment of the state courts, as well as the pleadings in those courts, were thus stated by the Supreme Court of the state on the petition for rehearing (80 Or. 393, 157 Pac. 785):

"Morris & Whitehead, Bankers, was a corporation which owned and had control of several other corporations, including the Oregon General Electric Company, which was incorporated on December 6, 1901, with a capital stock of $2,000,000, divided into 20,000 shares. W. T. Muir and three others each subscribed for one share of the stock of the Oregon General Electric Company, and the balance of the stock was subscribed by Fred S. Morris, who held the stock, however, as the property of Morris & Whitehead, Bankers. On June 7, 1902, the name of the Oregon General Electric Company was changed to the Oregon Water Power & Railway Company. On November 24, 1902, Julius Christensen and the defendants James H. Morris and Fred S. Morris formed a partnership under the name of Morris Bros. & Christensen, and succeeded to all the assets and business of Morris & Whitehead, Bankers. The capital stock of the Oregon Water Power & Railway Company was transferred from the corporation of Morris & Whitehead, Bankers, to the partnership of Morris Bros. & Christensen; the partnership agreement making James H. Morris and Fred S. Morris each the owner of two-fifths, and Julius Christensen the owner of one-fifth, of the stock so transferred. In June, 1905, the partnership of Morris Bros. & Christensen was dissolved, and about the same time James H. Morris and Fred S. Morris formed a partnership under the name of Morris Bros. When the firm of Morris Bros. & Christensen was dissolved, all the assets, including stock in the Oregon Water Power & Railway Company, which were apportioned to James H. Morris and Fred S. Morris, were taken over by the partnership of Morris Bros. In April, 1906, Morris Bros. sold all their stock in the Oregon Water Power & Railway Company for $65 per share. W. T. Muir, an attorney, who occupied a high position in the profession, entered the service of Morris & Whitehead, Bankers, on February 15, 1901, and his employment was continued by his successors in interest until April, 1906, when Morris Bros. sold all their Oregon Water Power & Railway Company stock. Mr. Muir received an agreed salary of $200 per month until April, 1902; pursuant to an agreement made in advance the amount was $275 per month from April, 1902, to December 31, 1902; during 1903 the agreed salary was $400 per month; on January 1, 1904, the salary was arbitrarily reduced by the employer to $275 per month, and while Mr. Muir did not formally agree to the reduction, he continued to receive $275 per month without objection during the remaining period of his service.

"The amended complaint alleges that W. T. Muir 'entered into the service and employment of the said Morris & Whitehead, Bankers, for an agreed salary as the attorney and counsel of said Morris & Whitehead, Bankers,'

and it was agreed that he would act as legal adviser for that corporation and for other corporations then owned and controlled by Morris & Whitehead, Bankers; that acting through its representative, Fred S. Morris, the employer, Morris & Whitehead, Bankers, agreed with W. T. Muir that he was inadequately compensated for the services he was then performing, and that if he would continue in the service for such salary, and devote his best energies to the success of the corporation, he would receive additional compensation for his services, and that such additional compensation would be 'an interest in the property, shares of stock, profits, and business of the said Oregon Water Power & Railway Company and of the other said corporations then owned, promoted, and operated by the said Morris & Whitehead, Bankers; that at said time the amount and extent of the interest of the property, shares of stock, profits, and business in the said Oregon Water Power & Railway Company, and said other corporations which the said William T. Muir under said agreement was to receive as additional compensation which was not then and there fixed or determined, but the amount of such interest in the property, shares of stock, profits, and business of the said Oregon Water Power & Railway Company, and said other corporations, which the said William T. Muir was to receive, as aforesaid, was to be thereafter fixed and determined as soon as the business of the said Oregon Water Power & Railway Company, and the said other corporations, and the business of the said Morris & Whitehead, Bankers, should be made and become successful and profitable.' It is then alleged that the partnership of Morris Bros. & Christensen assumed and agreed to pay all the liabilities of the corporation called Morris & Whitehead, Bankers, and that the partnership agreed that W. T. Muir was inadequately paid, and that if he would devote his best energies to the properties of his employers he would receive as additional compensation 'an interest in the property, shares of stock, profits, and business' of the corporations operated by Morris Bros. & Christensen, the extent of such additional compensation to be determined afterward.

"The plaintiff continues the narrative by averring that on or about November 7, 1904, in accordance with the agreements made with Morris & Whitehead, Bankers, and Morris Bros. & Christensen, relative to additional compensation, the partners in the firm of Morris Bros. & Christensen agreed among themselves that the amount, character, and manner of payment of the additional compensation which W. T. Muir was to receive would be 1,000 shares of the capital stock of the Oregon Water Power & Railway Company, but that the stock was not issued to him. The pleading proceeds by alleging that when the partnership of Morris Bros. & Christensen was dissolved, and as a part of the dissolution agreement, the dissolving partners agreed that the 1,000 shares of the Oregon Water Power & Railway Company stock which the partnership had in November, 1904, determined to issue to Muir would be and was his property, and that he was entitled to the stock as additional compensation, and that it was agreed between 'Julius Christensen, on the one hand, and the said James H. Morris and Fred S. Morris, on the other hand,' that James H. Morris and Fred S. Morris would deliver to W. T. Muir, immediately after the dissolution of the agreement, 1,000 shares of the capital stock of the Oregon Water Power & Railway Company, and 'that in furtherance and in part performance of the said agreement of dissolution of the said partnership of Morris Bros. & Christensen made between the said members thereof as aforesaid, the said Julius Christensen then and there assigned, turned over, and delivered unto the said James H. Morris and Fred S. Morris all of the capital stock of the said Oregon Water Power & Railway Company then owned by the said Julius Christensen, and all of his interest in the said Oregon Water Power & Railway Company.'

"The complaint concludes by averring that Morris Bros. sold the capital stock of the Oregon Water Power & Railway Company, including the 1,000 shares which should have been delivered to W. T. Muir, for $65 per share, on account of which it is alleged that the defendants are indebted to the plaintiff in the sum of $65,000. The defendants deny that they or any of their predecessors ever agreed to pay W. T. Muir additional compensation,

and they likewise deny that they or any of their predecessors agreed to issue stock to W. T. Muir."

A comparison of the foregoing facts with the record upon the present appeal shows, in our opinion, that the substantial and controlling facts in the two cases are precisely the same; and it is in effect, we think, so stated in this excerpt from the opinion of the court below (257 Fed. 153):

"The very crux of this case was presented to the Supreme Court, as it is here, namely, that the members of the firm of Morris Bros. & Christensen, on or prior to June 26, 1905, set aside to Muir 1,000 shares of the capital stock of the Oregon Water Power & Railway Company to be held for his use and benefit, and it was held in effect that the negotiations of the parties in that respect, whatever they were, were merged into and became a part of the written agreements for dissolution of the firm, and that Muir could not be permitted to establish otherwise the alleged agreement upon which he relied for recovery. However, by reason of the very strong contention of counsel that the alleged setting apart of the 1,000 shares of the power company stock to Morris Bros. for the use of Muir was an independent arrangement and agreement by and between the members of the firm of Morris Bros. & Christensen, and wholly aside from any of the agreements entered into looking to the dissolution of the firm, I am impelled to consider the case on that theory, but without deciding that the alleged independent agreement is not merged in the written agreements for dissolution."

The court below proceeded to consider the alleged arrangement regarding the setting aside of the 1,000 shares of the power company stock to Morris Bros., for William T. Muir as an independent agreement, and, without undertaking to decide whether or not it was merged in the written agreements of the parties, held that the evidence did not sustain the contention of the complainant. That the alleged independent agreements were so merged, however, was expressly decided in the former action.

We have, therefore, the identical questions presented on this appeal that were contested on the merits between the same parties in the former action in the state court of Oregon. Speaking of a similar condition the Supreme Court of that state said in Stager v. Troy Laundry Co., 41 Or. 141, 68 Pac. 405:

"It is practically conceded by counsel for both parties that the evidence adduced at the trial, up to the time of the interposition of the motion for a nonsuit, is in all material respects the same as that adduced up to the time of making a like motion at the former trial. We have therefore the identical question presented on this appeal that was contested and disposed of on the former. Stager v. Troy Laundry Co., 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459. We then concluded, after a careful inspection of the evidence, that the nonsuit was properly denied by the trial court. That view of the question has become the law of the case, and it is not subject to review on a second appeal. The rule has long been established, and is uniformly adhered to, that an appellate court will not revise or reverse its former decisions, made in the same cause and upon the same state of facts, and this for two reasons: (1) They stand as precedents and authority, as if made in any other case upon a like state of facts; and (2) as adjudications between the same parties. The policy of the law and the practical administration of justice require that there should be an end of litigation, and the rule has grown up to meet this requirement."

In White v. Ladd, in the same volume (41 Or. 332, 68 Pac. 739, 93 Am. St. Rep. 732), the same court further said:

"The potency of a judgment as an estoppel concludes every fact necessary to uphold it, and extends, not only to matters actually determined, but to every other matter which the parties might have litigated, and have decided as incident to and essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to the matters of claim and defense, and a default judgment, or one confessed, is attended with the same legal consequences, as there exist no tenable grounds of distinction between a title confessed and one tried and determined. Barret v. Failing, 8 Or. 152; Neil v. Tolman, 12 Or. 289, 17 Pac. 103; Glenn v. Savage, 14 Or. 567, 13 Pac. 442; Harris v. Harris, 36 Barb. 88; Hanson v. Manley, 72 Iowa, 48, 33 N. W. 357; Hobby v. Bunch, 83 Ga. 1, 10 S. E. 113, 20 Am. St. Rep. 301; Cromwell v. Sac County, 94 U. S. 351. This applies where a subsequent action is sought to be maintained upon the same claim or demand. But, if the second action is upon a different claim, the former judgment will only operate as an estoppel against the matters actually litigated, or as to facts distinctly in issue in that action. Appelgate v. Dowell, 15 Or. 513, 16 Pac. 651; Cromwell v. Sac County, 94 U. S. 351."

The case of Carroll v. Grande Bonde Electric Co., 49 Or. 477, 90 Pac. 903, relied on by the appellant, was an action by the administrator of the estate of one Leonard Carroll to recover damages alleged to have been caused by the negligence of the defendant company, the answer of which denied such negligence, and also set up contributory negligence on the part of the deceased. The action was tried with a jury, and after the plaintiff had introduced her testimony, and rested, the defendant moved for a nonsuit, on the ground, among others, that the death of her intestate was caused by his own negligence. The motion was granted—the record reciting:

"That the plaintiff's intestate, Leonard Carroll, at the time of the accident complained of, resulting in his death, was guilty of contributory negligence, which was the proximate and direct cause of the injury resulting in his death."

The judgment in that action was subsequently affirmed on appeal, and thereafter another action was brought for the same cause by the same plaintiff against the same defendant, to which the defendant pleaded the judgment in the former one as a bar. The statute of the state authorized a judgment of nonsuit in such a case against the plaintiff on motion of the defendant, when upon the trial the plaintiff fails to prove a case sufficient for submission to the jury, and that when such judgment is given the action is dismissed, but that such dismissal shall not have the effect to bar another action for the same cause. Sections 182, 184, B. & C. Comp. In holding the former action no bar in that case, the Supreme Court of the state said:

"The statute would seem to leave no room for argument as to the effect of an involuntary judgment of nonsuit."

But Mr. Chief Justice Bean, who delivered the opinion of the court, proceeded to say that—

"On a motion for a nonsuit, the court has no jurisdiction or authority to pass upon the merits or adjudicate the rights of the parties, and an attempt to do so is a nullity."

It is obvious that that statement was not necessary to the decision, since the court had already practically decided the question upon and

in accordance with the express declaration of the state statutes; but, if it can be properly regarded as an essential part of the decision, we are unable to see how it can be reconciled with the subsequent decision of the court in the subsequent case of Muir v. Morris, 80 Or. 378, 404, 154 Pac. 117, 157 Pac. 785, hereinbefore referred to, in which the same court, in an action where a motion for a nonsuit was made by the defendant and granted, twice fully considered and decided the case upon the merits. That being so, and the two suits of Muir v. Morris being between the same parties, and the evidence being practically the same in each, we see no escape from the conclusion that the former judgment is a bar to the present suit, notwithstanding the contention on the part of the appellant that the bill in the present case contains various allegations not contained in the complaint in the law action.

The judgment is affirmed.