### George O'Connor *vs.* Matthew J. Whittall.

Worcester. October 5, 1897. — November 24, 1897.

Present: Field, C. J., Allen, Holmes, Knowlton, & Morton, JJ.

</div>

*Personal Injuries — Master and Servant — Minor — Dangerous Machine — Assumption of Risk — Action — Absence of Guard.*

An intelligent boy nearly sixteen years old, who has never worked in a mill until he is set at work on a machine consisting of an apron upon which wool is placed and which travels over and under a roller having projecting teeth, and who, having been shown how to spread the wool over the apron and told to look out for the roller, is injured, after working several days, by having his hand caught in the teeth of the roller, will be held to have assumed the risk, and cannot maintain an action against his employer for his injury.

If a boy who is set at work upon a dangerous machine appreciates and understands the risk and works on the machine without objecting to the want of a guard, the fact that the machine might have been safer with a guard is immaterial, in an action by him for injuries received while so working.

Tort, for personal injuries occasioned to the plaintiff, while in the defendant's employ, by having his hand caught in a machine. The declaration contained three counts, the first two at common law, and the third under the employers' liability act, St. 1887, c. 270. Trial in the Superior Court, before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

The machine on which the plaintiff was injured was called a duster or feeder, and was a device connected with a picker, consisting of an apron which carried wool laid upon it up to and under a roller, whence it was carried into the beater of the picker. The apron travelled over and under two horizontal rolls, and was made of strips of wood about one and a half inches wide, presenting about two and a half feet of upper surface as it rolled, and was about two and a half feet long and about one and a half feet wide, and was moved by belting and gearing, which also moved the roller. The apron moved between two cast-iron sides, which served to keep the wool upon it, and was so placed that it ascended as it approached the roller. The roller was about the same length as the width of the apron, made of wood, about six inches in diameter, and with teeth or prongs of iron projecting all over it, about an inch and a half above the surface of the roller. These teeth were designed to pull the wool in, and carry it into the beater of the picker.

The plaintiff, while spreading wool upon the apron, had his left hand caught by the projecting prongs of the roller, and his arm drawn into the beater, and he received the injuries complained of.

The plaintiff testified that he was fifteen years and about eight months old at the time of the accident; that he had never worked in a factory or on any kind of a machine before; that he went to work on the afternoon of July 15, 1895; that one Mort, who was the boss of the carding room, took him to the machine and told him to take the wool from bags and put it on the apron, and keep the apron full and spread it all over; that Mort opened

the doors under the picker, and told him how to take the dust from under the. machine and throw it out of doors every day; that Mort put a little wool on the apron and ran it through; that he filled it half full and ran it through; that then the plaintiff did the same; that there was half a bag full of wool there at the time; that what was in the bag at the time would fill the apron about half full; that when Mort told him how to fill the apron and run it through, he said, "Look out for the roll"; that the plaintiff said, "All right"; that when the wool was run through the beater he was told to take it, put it in bags and drop it out of the window, and then take it to the store room; that Mort was not in the room over fifteen or twenty minutes; that after that Mort took him to the carding room, where there was a large picker, and told him that at five o'clock in the afternoon he was to run what waste there was through and take it up into the dusting room, then in the morning he was to mix it with the wool and run it through the duster; that in the morning he was to collect all the wool waste in the carding room, which would be five or six bags full, take it to the dusting room and run it through the duster; that one Delaney, a boy who had worked on the machine, was with him when Mort was there, and stayed about fifteen or twenty minutes; that Delaney used to run up to see how he was getting along, and stayed five or ten minutes, during the next three days when he worked on the machine; that otherwise he worked alone in the room on the machine; that he worked three days running through the amount of wool that was to be run through, both in the afternoon and in the forenoon; that the machine was stopped by a lever that threw a belt off a pulley; that this lever was on the left hand as he faced toward the machine; that he was told that by kicking a belt off on the opposite side of the machine, and on the right hand as he faced the machine, the duster could be stopped separately from the picker; that the lever would stop the whole machine; that the roller on the duster moved slow; that he went to work on the fourth day, taking the wool waste from the carding room, and putting it through the duster, as he had done on the previous days; that while he was putting the wool through and spreading it over the duster, the accident happened; that the beater of the ma-

chine was covered with a hood, and revolved with great rapidity; and that the roller of the duster was uncovered.

On cross-examination, the plaintiff testified that he could stand in front of the machine at the end of the apron; that he was told to stand at the corner, and was standing there at the time of the accident; that he was told that if the wool got lumps in it to let it go; that the day before he was hurt he stopped the machine and went to get some wool, and then tried to start the machine, and it would not go, and he called one Dinsdale and Delaney, who fixed it; that Delaney was there when Mort was there, and showed him how to put the wool in the same as Mort did, but Delaney did not run it the first day; that Delaney told him what Mort told him, if it ever got the wool caught to kick the band off; that Delaney did not tell him to put his hand up by the teeth, he told him to keep the apron full of wool and spread it all over all the time; that Delaney came up two or three times and looked on, and went out; that this was the first work he had ever done; that he had been in school up to the time he went to work; that he was studious and stood well in his class; that he got caught by spreading the wool all over; that he reached the bar which stopped the machine, but never thought of kicking the belt off; and that there were no other instructions given to him, and nothing else said about the machine to him.

The defendant called as a witness Alfred Thomas, who testified that he was a partner with the defendant, and that they owned and ran the mill as a partnership, and employed the plaintiff at the time of the accident; that he saw the machine directly after the accident; and that it was in good order.

The defendant also called Mort as a witness, who testified that he told the plaintiff to stand in front of the machine, and if. there were any lumps to let them go and take no notice; to take another piece, not to spread it all over, but to lay it on at the lower end of the apron, and that he was never to stand at the side of the machine; that there was nobody there with him at the time but the plaintiff; and that he told him to keep out of danger.

On cross-examination, Mort testified that he had suffered an injury since the accident, and had lost his memory, and finally

said that he could not swear to anything that he told the plaintiff about the machine, and all he remembered was that he took him to the machine and showed him the same, but that he could not testify as to what he said to him.

George Layng, called as a witness by the defendant, testified that he built machines similar to this, but did not build this machine nor any of the same make; that he saw it three or four days after the accident, and it was then in perfect condition; and that a guard could not be put on there so as to have sufficient material pass through to do the work.

On cross-examination, he testified that a guard might be put four inches above the iron sides, but he thought it would be of no account; that there would be no difficulty in having an iron guard a few inches away from the roll, and even a guard might be put within two inches of the roll; and that, if put high enough to allow the wool to pass under, it would not interfere with the working of the machine.

William Delaney testified, for the defendant, that he had a talk with the plaintiff the day he came; that he went to the machine with him; that there was no one with them at first; that Mort came up afterwards; that he showed the plaintiff where to put the waste, to place it in front of the machine, and take his wool and put it on the apron at the lower end, to hold it on until it got to travelling, and to keep the apron full; that he told him to take the dirt out from under the machine, and to put the sheet in behind the beater for the wool to·come out on ; that if anything happened, to stop the machine and go down stairs and let him know; that Mort came up and told the plaintiff to do just as Delaney had said and he would be all right; that he could not say that he saw Mort near the machine; that he himself handled the machine for the plaintiff five minutes; then the plaintiff did the same that he did; that he stayed an hour and a half and watched him; and that the plaintiff did it properly.   The witness showed the jury where he told the plaintiff to stand, and in doing so placed himself at the corner of the machine with his left hand towards the roller and facing towards the apron, but not facing directly towards the roller, placing himself in substantially the position that the plaintiff testified he was in when the accident happened.

On cross-examination, he testified that he told the plaintiff, if anything happened, to kick the belt off; that sometimes too much wool might get in and it would stop, and then he was to kick the belt off, if he could get to it; that he might not be able to get to that side of the machine; that he told the plaintiff to put the wool on all over, and no higher on one side than on the other; that that was what he showed him; and that he should tell anybody whom he instructed to do it to put it even all over.

The defendant called as a witness one Campbell, who testified that he asked the plaintiff how the accident happened, and he said that he was pushing in wool.

The plaintiff, in rebuttal, testified that he did not tell Campbell that he was pushing in wool; and that Delaney was in the room on the first day not more than fifteen minutes in all.

The judge, at the defendant's request, directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*F. P. Goulding,* (*W. C. Mellish* with him,) for the plaintiff.

*W. S. B. Hopkins,* (*F. B. Smith & W. S. B. Hopkins, Jr.* with him,) for the defendant, was not called upon.

MORTON, J. The plaintiff was injured by having his hand caught in the teeth of the roller, and drawn in and crushed. He was a little less than sixteen years of age, and had never worked in a mill till he was set to work on the machine by which he was injured, a few days before the accident occurred. He seems to have been a bright boy, and when he went to work he was shown how to spread the wool over the apron, and was told to look out for the roller, and said in reply, " All right." It must have been apparent even to a boy of his limited experience that it would be dangerous to get his hand caught in the teeth of the roller, and that that was liable to happen if his hand got too near it. There was no hidden danger, and that portion of the machine on which the plaintiff was working was simple in construction and operation, and there was nothing, we think, which, making due allowance for his youth and inexperience, he could not or did not appreciate and understand. We think, therefore, that he must be held to have assumed the risk. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182. *Crowley* v. *Pacific Mills,* 148 Mass.

228. *Coullard* v. *Tecumseh Mills,* 151 Mass. 85. *Ciriack* v. *Merchants' Woolen Co.* 151 Mass. 152. *Pratt* v. *Prouty,* 153 Mass. 333. *Patnode* v. *Warren Cotton Mills,* 157 Mass. 283.

If the plaintiff appreciated and understood the risk, and worked on the machine without objecting to the want of a guard, the fact that the machine might have been made safer with a guard is immaterial. *Sullivan* v. *India Manuf. Co.* 113 Mass. 396. *Gilbert* v. *Guild,* 144 Mass. 601. *Ciriack* v. *Merchants' Woolen Co.* 146 Mass. 182. *Downey* v. *Sawyer,* 157 Mass. 418.

*Exceptions overruled.*