Argued 12 December, 1900; decided 28 January, 1901.

### STAGER v. TROY LAUNDRY COMPANY.

[63 Pac. 645.]

MASTER AND SERVANT — ASSUMPTION OF RISK.

1. A servant was injured by having her hand caught between the rollers and the drum of a mangle while feeding the same, and she contended that she would not have received the injuries if the guard plate had been properly adjusted. The plate was too high, allowing her hand to pass under it and into the machine. She testified that, relying on the guard rail, she did not realize that there was any danger in operating the machine. The plate was adjusted by the managers, and employees were forbidden to change the adjustment. *Held*, not to show such an assumption of risk as to require a nonsuit on the motion of the master in an action against him for such injuries.

MASTER AND SERVANT — IGNORANCE OF MASTER.

2. Where a servant sues for an injury received by her hand being

caught between the rollers and the drum of a mangle, and it is shown that the injury was aggravated by the fact that it remained in the machine for some time because the managers did not know how to operate the machine to release it, but that they did what they could to extricate the plaintiff, it is error to instruct, in an action against the master, that, if the plaintiff was in fault and brought the injury on herself, she was still entitled to recover, if the defendant failed to do any act which would minimize her injury.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by Barbara Stager against the Troy Laundry Company for injuries received while in the employ of the defendant. From a judgment in favor of plaintiff, defendant appeals.                REVERSED.

For appellant there was an oral argument by *Mr. John M. Gearin,* with a brief over the name of *Dolph, Mallory, Simon & Gearin.*

A servant assumes all the risks ordinarily incident to his employment, and also all additional or unusual risks which he may knowingly and voluntarily undertake, and all obvious risks:   *Brown* v. *Oregon Lumber Co.,* 24 Or. 315; *Stone* v. *Mfg. Co.,* 4 Or. 52; *Gibson* v. *Or. Short Line Ry. Co.,* 23 Or. 493; *O'Hare* v. *Kuler,* 48 N. Y. Supp. 376; *Norfolk Beet Sugar Co.* v. *Pruener,* 55 Neb. 656 (75 N. W. 1097); *Collins* v. *Laconia Car Co.,* 68 N. H. 196 (38 Atl. 1047); *Ruchinsky* v. *French,* 168 Mass. 68 (46 N. E. 417); *Wilson* v. *Mass. Cotton Mills,* 169 Mass. 67 (47 N. E. 506); *Chirlewski* v. *M. S. R. Co.,* 42 N. Y. Supp. 936; *Batterson* v. *C. & G. T. R. Co.,* 53 Mich. 125; *Wormell* v. *Maine Cent. R. R. Co.,* 79 Me. 397 (1 Am. St. Rep. 321); Bailey, Master's Liability to Servant, p. 158; *Deisenreiter* v. *Kraus-Merkel Malt Co.,* 97 Wis. 279 (72 N. W. 735); *Luebke* v. *Berlin Mach. Works,* 88 Wis. 442 (43 Am. St. Rep. 913, 60 N. W. 711).

The following are similar cases, and state the law applicable here: *Walsh* v. *Commercial Steam Laundry Co.,* 31 N. Y. Supp. 833; *Connolly* v. *Eldridge,* 160 Mass. 566; *Crowley* v. *Pacific Mills,* 148 Mass. 228; *Greef* v. *Brown,* 7 Kan. App. 394 (57 Pac. 926); *Lowcock* v. *Franklin Paper Co.,* 169 Mass. 313; *O'Connor* v. *Whithill,* 169 Mass. 563; *Hickey* v. *Taaffe,* 105 N. Y. 26 (12 N. E. 286); *Hoyle* v. *Excelsior Steam Laundry Co.,* 95 Ga. 34 (21 S. E. 1001); *Jones* v. *Roberts,* 57 Ill. App. 56; *Coffee* v. *Chappal,* 2 N. Y. Supp. 648; *Chandler* v. *A. C. E. R. Co.,* 61 N. J. Law, 380 (39 Atl. 674); *Linton Coal & M. Co.* v. *Persons,* 43 N. E. 651.

For respondent there was a brief over the names of *Henry E. McGinn* and *Wm. P. Lord,* with an oral argument by *Mr. McGinn.*

MR. JUSTICE WOLVERTON delivered the opinion.

This is an action to recover damages for injuries received by plaintiff while in the employ of the defendant, and engaged in the service of feeding textile fabrics through a mangle for the purpose of drying and smoothing them. The action is based upon the alleged negligence of the managing agents of the defendant, in adjusting or placing the guard plate too high, thereby allowing too much space or too large an opening between the guard and the table, and in their want of knowledge touching the mechanism of the machine, particularly in the use of the tension screws for raising and lowering the rollers upon the cylinder. The defense is that the danger was obvious and incident to the service in which the plaintiff was engaged, the risk was one which she assumed in her employment, and therefore that the defendant is not liable for the injury sustained. Judgment was for the plaintiff, and the defendant appeals.

John Tait, a witness in behalf of the plaintiff, testified, in

substance, that he was manager of the company, and had been for 4½ years; that it had a machine, known as the "Wendell Annihilator," in operation twelve days before the accident, which occurred May 14, 1898; that what knowledge he had of the machine was obtained from seeing it set up by the agent, who was a practical man in the business, and from seeing one of the same make operated for an hour in San Francisco, but that there were other machines built practically upon the same principle, with which he had had experience for the last ten years.

The plaintiff testified that she had been living in Portland about 23 years, had been in the employ of the laundry company four years, and at the time of the accident was feeding the Wendell Annihilator; that her fingers came in contact with the rollers, and, because the guard was no protection whatever, it allowed her hand to get caught, so that it was burned and crushed; that, if the guard had been any protection, it would have skinned the whole back of her hand before it could have come in between the rollers, and that the guard should not have been any higher than would allow a sheet or tablecloth to go through; that after her hand was in there was plenty of help present, but they did not know how to release her; that Mr. Sherman, president of the company, afterwards said that, if they had properly understood the machine, her hand would not have been burned so badly; that the machine was a new one, and they did not fully understand it, and after examination he found it could have been loosened quicker if he had known how to do it; that, in her estimation, the guard rail was too high, and allowed her hand to get caught in the machine, and, if it had been any protection, the accident would not have happened; that she could not say just how high the guard was, but it should not have been any higher than was necessary to let the fabrics go under; that her hand was in the mangle from three to five minutes, and before she could be

released they had to get a crowbar and pry the roller up; that she had been operating the mangle about two weeks. On cross-examination she testified that she had worked on other mangles used by the company five or ten minutes at a time, off and on, during her employment; that these were not protected, and she did not realize the danger with this machine, because there was a guard rail for protection; that during the time she was at work the guard was taken off for about an hour, at the request of her immediate superintendent, and with Mr. Sherman's consent, but when Mr. Tait came back he said it was too dangerous, and directed it to be put back; that the machine worked about the same with the guard off as with it on, all the difference being that in the one case the goods passed directly between the rollers, and in the other they passed beneath the guard; that her hand rested up against the guard, but in no way touched it while it went under; that, from her information, the guard was adjusted by tension screws; that Mr. Sherman had charge of it, and the operators were not permitted to change the adjustment.

Reuben Francis described the important features of the mangle. It consists of a large cylinder, eight feet long and four feet in diameter, heated by steam, above which revolves a set of small rollers. A table is arranged in front, and against the cylinder; and a guard plate, consisting of an iron bar convex in form, one and one-half inches in width, the length of the machine, attached at the ends by means of bolts passing through slots, so as to be adjustable, is placed in front of the line of contact between the cylinder and the first roller. At the time witness saw it the lower edge was set about an inch and a half above the table, and about the same distance from the aperture or line of contact; the oval side being towards the operator. When the mangle is in motion the cylinder revolves upward from the operator, and the rollers toward him. The fabrics are fed to the ma-

chine under the guard rail. Thence they come in contact
with the cylinder, which carries them upward between the
rollers, and are dried and ironed by the heat and pressure
applied. This is, in substance, all the evidence introduced
by the plaintiff. When she rested her case, defendant moved
for a nonsuit, which was overruled, and such action of the
court is assigned as error.

I. A servant is understood to assume the ordinary risks
incident to the particular service in which he voluntarily en-
gages, to the extent those risks are known to him at the time
of his employment, or should be readily discernible to a per-
son of his age and capacity in the exercise of ordinary care
and prudence. Where the employment is obviously dan-
gerous and hazardous, and conducted in a way fully known
to the servant at the outset, he assumes the risk incident to
the conduct in that way or manner, although a safer method
was known or could have been adopted: Shearman & Red-
field, Neg., (5 ed.), § 185. Compensation is supposed to be
adjusted with reference to the hazardous nature of the serv-
ice, and the employment is entered upon with a view to the
discharge of a particular duty; hence the risks incident are
assumed by an implied stipulation under the employment.
The same considerations, however, do not apply to risks
which arise subsequent to the employment and during the
course of the service. These the employee may avoid by
quitting the service. If he voluntarily continues, however,
without complaint or objection, after knowledge or notice
of their existence, under conditions by which he is chargeable
with an appreciation of the danger, and where ordinary pru-
dence would require of him a different course, he is held also
to take upon himself the responsibility entailed by the risk
he continues to incur; and this applies to perils engendered
by defects in appliances due to the master's fault: Shearman
& Redfield, Neg. (5 ed.), §§ 209, 209*a*. The rule is clearly
stated by Mr. Justice DEVENS in *Leary* v. *Boston & A. R.*

*R. Co.,* 139 Mass. 580, 584 (2 N. E. 115, 116). He says: "The servant assumes the dangers of the employment to which he voluntarily and intelligently consents, and, while ordinarily he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions." The rationale of this latter rule is not entirely settled, but the opinion, which appears to be adequate to the purpose, is that, where two negligent acts conduce to an injury, the responsibility attaches to the one that stands as the proximate or immediate cause. Thus, if a master culpably suffers defects in appliances to exist, that may be a contributory cause to an injury ensuing by reason of the use of such appliances; but if a servant, being cognizant of their defective character, voluntarily consents to continue in their use, his act is one of negligence, also, and, being the nearest, constitutes the proximate, cause, which shifts the liability from the master, and the servant will not be heard to complain. In such a case he cannot hold the master responsible, although culpable, because his own negligence is the direct and immediate cause of the injury: *Fitzgerald* v. *Conn. River Paper Co.,* 155 Mass. 155 (29 N. E. 464).

It will be observed in this connection (and for which the case just cited is authority) that one does not voluntarily assume a risk who merely knows that there is some danger, without at the same time appreciating the danger to which he is subjecting himself by accepting or continuing in the service, while, on the other hand, he does not necessarily fail to appreciate the risk because he hopes and expects to encounter it without injury. Sometimes the circumstances may show, as a matter of law, that the risk is understood and appreciated. At other times they may present a question of fact for the jury. It is always the duty of the master to pro-

vide his servant reasonably safe tools and appliances with
which to work. If he fails in this, he may be charged with
culpability, unless he is relieved by the act of the servant in
accepting or continuing in the service, with adequate knowl-
edge of defects and a due appreciation of the attending dan-
ger. Risks which are incident to the business must not be
confounded with such as are denominated "obvious." The
former sort comprises those which accompany or arise from
the natural or usual method of conducting the particular
business, and has more special relation to perils which attend
the business generally, while the latter includes such as are
manifest to the sense of observation, open and readily dis-
cernible, whether they arise from the nature of the business,
the particular manner in which it is conducted, or the use
of defective or unsafe appliances. Now, it is urged that the
risk to which plaintiff subjected herself was both an inci-
dent to the business and obvious. The authorities appear to
be uniform and conclusive that, where a machine similar to
the Wendell Annihilator in principle is operated without a
guard plate, the operator assumes the risk; for in such case
the method of operation is known, and the peril patent:
*O'Connor* v. *Whittall,* 169 Mass. 563 (48 N. E. 844) ; *Han-
son* v. *Hammell,* 107 Iowa, 171 (77 N. W. 839) ; *Greef.* v.
*Brown,* 7 Kan. App. 394 (51 Pac. 926) ; *Jones* v. *Roberts,*
57 Ill. App. 56; *Berger* v. *St. Paul, M. & M. Ry. Co.,* 39
Minn. 78 (38 N. W. 814) ; *Hoyle* v. *Excelsior Laundry Co.,*
95 Ga. 34 (21 S. E. 1001) ; *Hickey* v. *Taaffe,* 105 N. Y. 26
(12 N. E. 286). In the case at bar there was a guard plate,
which was evidently designed to lessen, if not to obviate, the
danger incident to feeding fabrics within the aperture be-
tween the rollers, and, if properly adjusted, would, no doubt,
have afforded some protection; and it was the duty of the
master to see that it was properly adjusted: *Woods* v. *Long
Island R. R. Co.,* 42 N. Y. Supp. 140. Indeed, the manager

of the defendant realized as much, for he had forbidden the employees to regulate the machine in any form.

The evidence of the plaintiff tends to show that the guard was set an inch and a half above the table, and an inch and a half in front of the aperture. She says her hand went under the guard without touching it, and that, if it had been properly adjusted, it would have skinned the whole back of her hand. If such was the adjustment, the guard was little protection, except as it may have served as a warning that there was danger behind it, for a woman's hand will readily pass within the space of an inch and a half as far as the plaintiff's was shown to have been drawn in. She further testified that in her estimation the guard was too high, and that, if it had been in any manner a protection, her hand would not have been caught; that she had worked at other mangles without the guard rail on, and did not realize the danger with this machine, because of this guard plate for protection. Thus the testimony presents the question as to whether the guard plate was properly adjusted. It is insisted, however, that, whether it was or not, the danger behind it was so apparent and obvious that the court should say, as a matter of law, that the plaintiff assumed the risk attending the service. If the guard plate was so adjusted as to give absolutely no protection at all, and this was at once apparent, the case would not be different from one where there was no attachment of the kind, and the risk would be obvious. But, if the adjustment does in fact give some protection, a prudent person would be led to place more or less reliance upon its availability; and, the nearer perfect the adjustment, the less would be the danger in operating the machine. It may or may not remove the danger entirely. If it does, then implicit reliance may be placed upon it, and no one need apprehend any danger from the service. So, therefore, the danger becomes a matter of degree, depending upon the manner of the adjustment of the guard plate, which, being attached, the

plaintiff affirms, she supposed was a protection, and therefore did not appreciate the real danger. Under these conditions, we cannot say, as a matter of law, that she assumed the risk by accepting or continuing in the service, and the question was properly left to the jury for their determination. True, the plaintiff operated the machine for an hour or so with the plate detached, but the manager directed it to be put back, saying it was too dangerous. The fact, however, was not calculated to warn her of the danger with the guard on. If it had any tendency, it was rather to lead her to believe that the guard would protect her, and thus cause her to pay less heed to the real danger. So we conclude the nonsuit was properly denied.

2. The next question in the case arises upon an instruction given to the jury as follows: "If in this case the plaintiff brought this injury upon herself by her own fault, there having been negligence on the part of this defendant or not, as the case may be, if it has been shown by a preponderance of the testimony that through some other acts of the defendant it failed to minimize it,—failed to lessen the effects of the injury, whereby the plaintiff sustained an additional injury than otherwise would have been incurred,—that would offer a claim for consideration, which should be regarded by the jury." This instruction is clearly erroneous, for the jury are thereby told that, even if plaintiff was at fault and brought the mischief upon herself, she was nevertheless entitled to recover, if the defendant failed to do any other act that would minimize her injury. We presume this was given in view of the testimony adduced from which it is argued that the defendant's managers were not sufficiently acquainted with the technical mechanism of the mangle to be able to release the plaintiff's hand as quickly as they would if better informed in relation thereto, thus prolonging her suffering and adding to her injury. Proprietors and managers are not required to possess themselves of technical and

exact knowledge of the detailed mechanism and workings of machinery, with a view to extricating persons from perils to which they may subject themselves through their own folly or negligence. So that it cannot be charged against the defendant that it was guilty of negligence in not having a person possessed of such knowledge convenient when the peril arose, so as to extricate the plaintiff from her dilemma. It is unusual to anticipate accident, and to provide for the most speedy relief when such an exigency arises. There is no intimation, either by the evidence or the argument of counsel, that the defendant's managers willfully or wantonly prolonged the sufferings of the plaintiff, while it must be conceded that they did all they could, with their knowledge of the machinery, to extricate the plaintiff as quickly as possible. We do not desire to be understood as intimating that they did not possess adequate knowledge to have relieved her in the most speedy manner possible, under the attending circumstances of the accident; but it seems plain that they did all they could, and hence are not chargeable with negligence in prolonging her suffering and thereby adding to her injury. For this error the judgment will be reversed, and the cause remanded for a new trial.          REVERSED.

Decided 4 February, 1901.