## CŒUR D'ALENE LUMBER CO. v. GOODWIN.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

No. 1,813.

**1. TRIAL (§ 419*)—MOTION FOR NONSUIT—WAIVER.**
Denial of a motion for nonsuit at the close of plaintiff's evidence is waived by defendant introducing its evidence.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 982; Dec. Dig. § 419.*]

**2. PLEADING (§ 34*)—COMPLAINT—CONSTRUCTION.**
Where defendant has answered, the complaint should receive a liberal construction, especially when challenged by an objection to the introduction of evidence.
[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 72; Dec. Dig. § 34.*]

**3. MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—COMPLAINT.**
Where a complaint for injuries to plaintiff as off-bearer from an edger in defendant's sawmill alleged that plaintiff was put to work in a box of rather small dimensions, with planks coming away from the edger passing him on both sides, requiring him to remove the edgings as they came by, that he was inexperienced in the service, and was not warned or instructed relative to the danger thereof, and that he was struck and injured by a plank propelled along the table, the complaint stated a cause of action.
[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 258.*]

**4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY.**
In an action for injuries to an off-bearer from an edger in a sawmill, whether defendant, in view of plaintiff's ignorance, was negligent in failing to give plaintiff special instructions, intended to prevent injury, *held* for the jury.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1044-1050; Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the Northern Division of the District of Idaho.

Action by George Goodwin against the Cœur d'Alene Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action for damages, arising on account of personal injuries received, alleged to have been caused by the negligence of the plaintiff in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Plaintiff below, the defendant here, was injured while at work in an edger pit or box tailing the edgings from boards or planks as they came from a double edger. The table which carried the boards was 5 feet and 1 or 2 inches wide, and was provided with rollers, over which the boards were moved as they came from the machine. These rollers were four in number after leaving the press rollers. The press rollers were arranged one set in front and one aft of the edger saws, and were used for holding the planks in place while passing through the machine. The edger pit was an open space left in the table between two of the rollers over which the planks were carried away. In dimensions it was about 5 feet 1 inch in width, the width being crosswise of the table, 2½ feet in length, and 2 feet 9 inches in depth. The last roller formed the back end of the edger pit, in front of which was constructed a fender about 8 inches in width, extending from near the top of the roller downward on an incline within the pit. The purpose of the fender was to guide the boards as the ends came across the pit above the roller and allow them to pass on to the table below. The plaintiff was put to work in the edger pit; his duty being to shove or cast the edgings from the planks to the outside of the table, to be carried away. The edger being of the double pattern, boards were edged at the same time upon both sides of the table, and the man in the pit was required to stand between these boards, as they came away from the machine, and perform the work. His position was facing the edger; but his work required him to shift or turn about more or less to clear the table of the edgings as they came down the table along with the planks. The distance from the last pair of press rollers, or those just aft of the edger, was about 18 feet, or possibly 18 feet 6 inches, to the edge of the pit, and 21 feet to the roller at the after edge. The boards, while passing through the pressure rollers, were driven through with considerable force by the power of the machinery; but, when released, were carried on by their own momentum, and could be checked or stopped by a person in the pit, but not otherwise.

Now, in view of this construction of the edger, the table for carrying away the boards and edgings, the edger pit, and its relation to the edger, and the manner in which the whole was operated, it is alleged in purport by the plaintiff that defendant, in May, 1907, employed plaintiff to work in and about its sawmill; that plaintiff was at the time wholly inexperienced with respect to the working and operation of the machinery of sawmills; that he was first set to work on the log decks in getting logs out of the water, and about a month later was directed to work in the edger pit "tailing the edger." After describing the duties required of plaintiff in that position, the operation of the edger and edger table, the dimensions of the table, the dimensions of the edger pit, and the workman's position therein, the complaint continues as follows:

"That said work which plaintiff did, and which plaintiff was directed to do by the said defendant as aforesaid, was dangerous work; that the place where plaintiff was directed to stand in performing said work and labor was not large enough to permit plaintiff or any laborer to stand therein and work and labor with safety to himself; that the work required by defendant of plaintiff as aforesaid was too great for one person to perform, and in the attempted performance thereof was fraught with great danger to plaintiff, or any person engaged in the operation of such work; that the plaintiff at said time was ignorant of the danger attendant upon the performance of said labor, and was ignorant and inexperienced as aforesaid, and did not know or appreciate the danger incident to the performance thereof, but that the defendant at all of said times, and at the time of putting plaintiff to work as aforesaid, did know and fully realize that said work was dangerous, and that the labor required was too great to be performed by one ordinary man in safety, and did know that the place provided for plaintiff to work was not sufficiently large to enable plaintiff to work with safety to himself; but that said defendant did not, nor did any of its agents or officers, give plaintiff any instructions whatever as to the dangers attendant upon such work, or inform him of the dangerous place in which he was required to work, or of the fact that more work was required of him than could be safely performed by one laborer; that the mill of defendant in which plaintiff was put to work as aforesaid is a very large mill, having a large capacity for the manufacture of lumber, and that it is the

custom in mills of such capacity universally to have more than one man employed to do the work required to be done by plaintiff as aforesaid, all of which facts were known to defendant, but unknown to plaintiff. * * *

"That plaintiff at the time of said accident was of the age of 26 years, and had not had ordinary experience, and did not at said time have even ordinary knowledge of dangers incident to and connected with the operation of sawmills in general, and of the work as aforesaid in particular, and had not the ability and understanding to know and appreciate the dangers of said position, or even common ordinary dangers incident to and in connection with the operation of sawmill machinery and of machinery in general, and then and there knew no more about such machinery. or any machinery, than a child of the age of 14 years and of ordinary intelligence.

"That on or about June 9, 1907, and after plaintiff had been employed for eight days tailing the edger as aforesaid, and while plaintiff was in the discharge of his duties as aforesaid, and exercising reasonable care and caution, and without any fault, negligence, or carelessness on the part of plaintiff, plaintiff's right leg was caught between a board passing from the edger table to the table with live rollers beyond the place where plaintiff was standing, and plaintiff was pushed and dragged by means thereof until his leg was fastened and pinioned against the said table beyond said edger table, and pinched and crowded between said table and the said board, and the flesh, muscles, tendons, bones, and blood vessels of plaintiff's said right leg were bruised, wounded, lacerated, and mangled in a most shocking and painful manner, and the cords and ligaments of said leg were so cut, bruised, and mangled that plaintiff was forced to quit said employment as aforesaid; and plaintiff went to a hospital and received treatment therein at the town of Cœur d'Alene, and afterwards at other places, and was in the care of physicians until finally in December, 1907, after two operations had been performed in a vain attempt to cure said injury, it became necessary to amputate and cut off said leg in order to save plaintiff's life, and in December, 1907, said leg was amputated and removed at a point about two inches above the knee joint; that said amputation of said leg was caused and made necessary by the injury received by plaintiff as aforesaid in the mill of defendant. * * * And said board which caught plaintiff's leg as aforesaid was a very wide board, and came across said table and projected and filled a large portion of the space provided for plaintiff to stand in, and left no remaining room sufficient for plaintiff to stand and perform the labor required of him."

To this complaint a demurrer was interposed, on the ground that it did not state facts sufficient to constitute a cause of action, and was overruled by the court. After answer, and the cause having gone to trial, the sufficiency of the complaint was again objected to by way of demurrer to the evidence. This objection was also overruled. At the close of plaintiff's testimony, defendant moved for a nonsuit. This was denied. Again, at the close of all the testimony, the defendant moved for an instructed verdict dismissing the cause, which was also denied. The cause being submitted, and verdict and judgment rendered for plaintiff, the defendant prosecutes its writ of error.

R. E. McFarland, for plaintiff in error.

R. T. Morgan and Edwin McBee, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Two questions are presented on this record for consideration: First, whether the complaint is sufficient; and, second, whether the motion for a directed verdict should have been allowed. The motion for a nonsuit was waived by the defendant introducing its evidence after the motion was denied by the court.

The sufficiency of the complaint is challenged upon the theory that it reveals too much, in that it shows that the hazard of the employment, whatever it was, was an open and obvious one, and that, by engaging in the service, the plaintiff assumed whatever risk of danger attended it. The defendant having answered, the complaint should now receive a liberal construction; and this would be equally so when challenged by objection to the introduction of evidence to support it. It must be conceded that there is some ambiguity in the complaint, and much that is conclusion merely; but it does show that the plaintiff was put to work in a box of rather small dimensions, as stated in the complaint, about two feet wide and three feet long, with planks coming away from the edger passing him upon both sides, and required to remove the edgings as they came by, which, coupled with the allegation that he was inexperienced in the service, and was not warned nor instructed relative to the danger attending it, would seem to exhibit a good cause of action, all intendments being in favor of the sufficiency of the complaint. The first objection is therefore not well assigned.

As to the next question, the evidence tends to show that, after the plaintiff had worked about four weeks on and about the decks rolling logs and pulling them out of the water, he was put to work by the foreman of the mill in the edger pit; that he was wholly inexperienced in that service, and so advised the foreman, but that the foreman, notwithstanding, did not warn him of any danger, nor instruct him how to avoid such as impended; that the foreman agreed to pay him $2.75 per day, which was 25 cents per day more than he had been getting previously, and that much more than was paid to the man whose place he took in the edger pit. In telling how the accident happened, the plaintiff says:

"There was a whole lot of edgings come out at the same time together, and a few boards probably, and there was a whole lot of edgings come out at this time; and I stooped over to get the edgings, and I raised up my leg to stoop over or to catch them, and a wide board, about 18 or 20 feet long, I should judge, came out from the edger and struck me here, under the knee, and jammed my leg up against the roller and bruised it, and then there was another board come out and kept pushing that one on; and I stayed in there for a good while, and the boards kept pushing out—it couldn't go back—the saw was there."

He further relates that there were two band saws composing the edger; that one is called the "big side" and the other the "small side"; that one of them cuts all the big logs, and the other the small logs; that at the time two boards came out at the same time, there being two edger men working at the double edger; and that his duty was to push the edgings off the table and cast them down on an endless chain at the sides to be carried away to the slasher. Further on, he states that, when the edgings were getting away from him, he turned right around from the saw to catch the edgings, turning to his left, and the board came out from the big saw, and struck him under the right knee from behind—the big edger, when facing the same, being on his right. Further, he says:

"I tussled with the board for quite a while until I got it out. I screamed and hollered, and nobody came to me, so I got out as best I could. I lifted

the end of the board up as well as I could, and when I lifted it up, of course, the saws pushed it out, and it run along."

This occurred in the afternoon; but plaintiff went back to work, and continued all the next day, and the day following until noon, when he told the foreman of his injury. The foreman directed him to go to the office and get a ticket to the hospital, which he did. He remained at the hospital about two days. Not liking the physician, he left, and employed another doctor, and afterwards went to work elsewhere. He worked from place to place until December, when, becoming very ill, he went to the Harrison hospital. On examination by the physician in charge, it was found that he was afflicted with acute inflammation of the bone, about the knee joint and above and below it, termed "osteomyelitis," which culminated in amputation of his leg at the upper third of the thigh.

A witness who seemed to be familiar with the operation of the double edger testified that there was danger in the pit, providing the board was so long that it was not released from the press rollers when the end of it crossed the pit.

Among the witnesses for the defendant was one H. W. Strathern, who was a millwright and of long experience in the operation of saw-mills. He described the edger pit minutely by dimensions as described in the statement preceding this opinion. As to the roller back of the pit, he says:

"There is a plank put in so that if a board— They are liable to bend up or bend down as the case may be, so there is a plank set at an angle so that it will strike that plank and work up to the roll and go straight over the roll."

In the witness' opinion the edger pit was a safe place in which to work. He described a board passing through the edger as coming pretty fast, but said that after it leaves the edger the force dies off, and that if it should strike a man it would be without force. On cross-examination, when asked whether a green hand in the pit was liable to get hurt, he answered:

"I don't think a man would put a man in there unless he notified him. I know I never do."

And further, in effect, that, as a prudent millman, he would give such warning.

The foreman testified that, when he employed plaintiff, he told him that the only danger was "that the boards would catch him and shove him out of the hole." Further, that at the time of the accident the mill was running on logs in length from 12 to 16 feet, with once in a while a small log from 18 to 20 feet; that he had seen a man pushed out upon this table; that the man who succeeded plaintiff got pushed out by looking around to the back of the mill; and that a 20-foot board would just about catch a man, was all.

John F. Smith, a millwright, and another witness for the defendant, testified as follows:

"Q. Now, suppose that a man while tailing that edger should turn with his right side towards the edgers and stoop over with his hand near the rollers behind him, stand on one foot and raise his right leg until his knee

is on a level with the surface of the edger table, and an 18-foot board were to come out of the edgers and down the table and strike him in the knee joint, the inside of the knee joint, on the right-hand side, would it have force enough to drag or push him up against this roller so as to injure his knee? A. If he turned his right side to the edger? Q. Yes, sir. A. I don't think it would strike him with force enough to pin him in there. It might push him over the rolls if it got a square strike at him. I don't see how it could pin him in there."

A little later the witness continued:

"It requires a certain amount of skill there, or a man must get accustomed to the kind of work that he is doing. It is a pretty busy place when small stuff is coming through that edger."

There is a dispute in the evidence as to the length of time the plaintiff had a helper; the plaintiff saying but a short time, while the defendant claims that there was one present during the whole time plaintiff worked in the pit.

Such, in effect, is the testimony adduced bearing upon the particular controversy submitted for consideration.

Counsel for plaintiff in error has reduced the inquiry to a narrow limit. By his seventh assignment of error he alleges and shows that the trial court took the question whether the defendant had provided the plaintiff with a reasonably safe place in which to work from the jury, saying to them that the evidence offered by the plaintiff was insufficient upon which to warrant them in finding upon that issue. The other point, whether the plaintiff had or had not a helper, is now immaterial, as it is not shown that the helper in any way instructed him touching the danger attending the service.

That the service was attended with much danger, dependent upon the length of the board being edged and trimmed, there can be but little question. If the boards were of the length of 20 feet or more, they would be driven across the edger pit with great force by the action of the press rollers, and if the workman was caught by them he would be forced out of the box. It is quite evident that a person might be caught just as plaintiff claims his injury occurred. Even if the board was not of the length of 20 feet, it might be driven forward by another board following it through the press rollers, and do a like damage.

The plaintiff was an adult, being 26 years of age, and the presumption obtains that he would comprehend and appreciate the ordinary dangers attending the operation of machinery with which he was familiar, or about which he had worked for some length of time. In this instance, however, his position was behind the edger, and 18 or 20 feet away from it, and having nothing to do with its operation. When set to work in the box, he advised the foreman that he was wholly inexperienced in that service; but, notwithstanding, he was neither instructed as to the operation of the machine nor warned of the especial danger that would attend him in his work. At least, there was evidence to this effect to go to the jury. For the uninformed and unwary, the edger pit constituted a veritable trap, as, when the boards were coming from the edger across the pit loose, there was no danger, but when long and rigid, being not yet released from the press rollers, or when being driven forward by another board from behind, there

was abundant peril and the liability to injury was great. The peculiar situation, and the latent danger attending it, required of the foreman, when advised of the inexperience of the employé, that he give special instructions that injury might be avoided. Upon the whole, we are of the opinion that the court properly submitted the cause to the jury upon this question alone. See Stager v. Troy Laundry Company, 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459; Verdelli v. Gray's Harbor Commercial Co., 115 Cal. 517, 47 Pac. 364.

Some question is made that the damages assessed are excessive, based upon the contention that the necessity for the amputation of the limb was not caused by the hurt that plaintiff received, but sprang from an independent trouble. However this may be, we do not find that the question was ever submitted to the court below, and it is not properly here for our consideration.

The judgment is affirmed.