[S. F. No. 3856.    Department Two.—February 1, 1907.]

HAROLD JENSON, by Oscar Jenson, his Guardian ad Litem, Respondent, v. WILL & FINCK COMPANY, Appellant.

NEGLIGENCE—INEXPERIENCED SERVANT—EMPLOYMENT UPON DANGEROUS MACHINERY—DUTY OF EMPLOYER TO INSTRUCT.—When one who is known to be an inexperienced person is put to work upon machinery which is dangerous to operate unless with care, and by one familiar with its structure, the employer is bound to give him such instructions as will cause him fully to understand and appreciate the danger attending the employment, and the necessity for care; and it is a breach of duty on the part of the employer to expose an inexperienced servant, even with his own consent, to such danger without giving him any instructions or cautions.

ID.—INJURY TO SMALL BOY—CHANGE OF EMPLOYMENT—FAILURE TO WARN—SUPPORT OF VERDICT.—A verdict for damages for injury to

a small boy is supported by evidence that he was regularly employed as cash-boy in a store, and was taken therefrom and put, without any warning or instruction, to dangerous work, of which he had no experience or knowledge, in removing large loaded trucks of merchandise from a basement to the sidewalk, on a rickety and uneven elevator without sides to protect his leg from being thrust between the elevator and sidewalk by a sudden movement of the truck, which occupied almost the entire floor space of the elevator, and was liable to shift in transit, and that by reason of such sudden shifting his leg was caught and mangled so that it had to be amputated.

ID.—KNOWLEDGE OF BOY—UNAPPRECIATED ·PERIL—RISK NOT ASSUMED. —Evidence that the boy knew that if he projected his foot beyond the elevator it would be injured does not tend to show that he knew and appreciated the fact that the truck might, by reason of its size and construction or position on the elevator, list to the side and push his foot beyond the elevator floor. If, from youth or inexperience, or both combined, he did not appreciate the peril in which such shifting might place him, he is not deemed in law to have assumed the risk of injury, so as to relieve the defendant from any liability in placing him there without warning.

ID.—WARNINGS COMMENSURATE WITH DANGERS.—The warnings or instructions to be given to a young and inexperienced servant must be commensurate with the dangers to which he is exposed, and if special dangers are incident to the employment, particular instructions pointing out those dangers must be given, so that they may be known and appreciated by him.

ID.—KNOWLEDGE AND APPRECIATION OF DANGER—QUESTION OF FACT.— The law does not expect or exact from a child of tender years the same degree of care, caution, or circumspection that it does from an adult; and whether, in a given case, a minor employee is shown to have had knowledge and an appreciation of the dangers incident to his employment is (except in cases where the evidence unquestionably demonstrates that he did have it) a question of fact to be determined by the jury.

ID.—SIGNS UPON ELEVATOR FORBIDDING PERSONS TO RIDE.—Signs upon the elevator forbidding persons to ride thereon, whether easily read or not, had application only to persons using it for their convenience, and not to servants whose duty and custom it was to take freight up therein, and did not apply to plaintiff, who was ordered to take up the loaded truck to the sidewalk and thence to a new warehouse.

ID.—SUFFICIENCY OF COMPLAINT—REVIEW UPON APPEAL FROM ORDER.— The sufficiency of the complaint can only be reviewed upon appeal from the judgment, and cannot be considered where the only appeal is from an order denying a new trial.

ID.—INSTRUCTION AS TO NEGLIGENCE—DUTY OF EMPLOYER.—An instruction to the jury (in connection with other instructions relative to the duty of the employer where a minor is directed to perform

hazardous work) pertaining to his legal duty to provide for his employees a reasonably safe place, and that his failure to do so constituted negligence, was properly given.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. John Hunt, Judge.

The facts are stated in thte opinion of the court.

Jesse W. Lilienthal, and Lloyd & Wood, for Appellant.

Sullivan & Sullivan, for Respondent.

LORIGAN, J.—Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained while in the employment of defendant. The cause was tried before a jury, who returned a verdict in favor of plaintiff for seven thousand five hundred dollars, upon which judgment was entered. A motion by defendant for a new trial was denied, and this appeal is from such order alone. There is no appeal from the judgment. The complaint alleged that on February 9, 1901, defendant was carrying on business in the city of San Francisco and maintaining in the basement of premises No. 100 O'Farrell Street a warehouse, where it kept a stock of merchandise, and operated in said premises an elevator for the purpose of transporting goods from said basement to the sidewalk in front of said premises; that for the purpose of transporting said goods therefrom it was necessary to place the goods in a wheeled truck, which was placed upon the elevator and hoisted thereon to said sidewalk; that prior to the ninth day of February, 1901, plaintiff had been employed as a cash boy in defendant's store, Nos. 818-820 Market Street, and prior to said date had never had any experience whatever in the work of transporting goods in trucks from the basement of said premises, No. 100 O'Farrell Street, to said sidewalk, or any experience whatever in handling or transporting goods in elevators; that on said day defendant, well knowing the inexperience of plaintiff in the work of so transporting goods, and well knowing the inexperience of plaintiff in handling and transporting goods upon the said elevator or any elevator, put plaintiff to work in said basement,

and directed him to attend to the transportation and transfer by means of said wheeled trucks of the goods of said defendant from the said basement; that in order to transport said goods as aforesaid it was necesary for plaintiff, in the performance of such duties, to go on said elevator with the truck load of goods; that the work of transporting such goods in a truck on said elevator was a hazardous undertaking and the hazard was known to defendant and unknown to plaintiff; that plaintiff was unfamiliar with the dangers attending said work which he was ordered to do on said day, and was unfamiliar with the dangers of transporting said goods; that before ordering plaintiff to do the work of transporting goods in said trucks from said basement to the sidewalk, defendant did not give plaintiff any instructions or directions whatever as to the manner in which he should perform his work or transport said goods from said basement; that while plaintiff on said day was in the act of transporting from said basement to the sidewalk on the elevator a large quantity of goods belonging to defendant in one of its wheeled trucks, plaintiff's right leg and foot, without any negligence on his part, were crushed between the platform of the elevator and the sidewalk, and were then and there mangled and bruised; that on account of said injuries it was necessary to amputate plaintiff's leg and foot.

The answer of defendant denied the allegations of the complaint, and set up affirmatively, among other separate defenses, that plaintiff violated instructions, and that he had knowledge during his employment of all the dangers incident to his work in connection with said trucks and elevator, and assumed the risk.

Upon this appeal it is contended that the evidence was insufficient to justify the verdict; that the court erred in denying defendant's motion for a nonsuit, and erred also in its rulings on the admission of evidence and in giving and refusing certain instructions.

The evidence on the part of plaintiff showed that in December, 1900, shortly before the holidays, the plaintiff, then about twelve and a half years of age, and four feet three inches in height, was employed by Mr. Litzius, secretary of the defendant, as cash boy in its toy department, where he was working in that capacity on the morning of February 9,

CL Cal.—26

1901. On this date defendant was in control of premises located in three different places in the city of San Francisco used in connection with its business, these consisting of its store and two warehouses. Its store and salesrooms were at Nos. 818-820 Market Street, in the Phelan building, extended back to O'Farrell Street, with an entrance thereto on said street, and included the ground floor and the basement, the toy department where plaintiff was employed being conducted in the latter place under the management of C. G. Weir. About a block westerly from the store, and at No. 108 O'Farrell Street, in the basement thereof, was an old warehouse of defendant from which, as occasion required, goods were brought to the store on Market Street. This warehouse was in charge of Osma Welk. Defendant had established a new warehouse on the opposite side of O'Farrell Street from its store entrance on that street, and on the day of plaintiff's injury was engaged in removing its goods from the old warehouse to this new one, the employees in the former, with additional employees assigned to the task, doing the work. It was while assisting in this work that the plaintiff was injured, and how he came to leave the toy department and be engaged in the warehouse, and the circumstances surrounding his injury, are best disclosed by the evidence of the plaintiff himself. He testified that on the morning of February 9, 1901, while engaged in the discharge of his ordinary duties as cash boy in the toy department, Osma Welk, who was in charge of the old warehouse, came over to the toy department and stated that Mr. Litzius wanted another boy over at the old warehouse to move goods, and that his superior, Mr. Weir, directed him to go over to the basement to work, and he did so. When he reached there, Mr. Welk said to him: "Take these trucks over; this is your work; take those trucks over to the other warehouse." This was all he said to him; all the direction that was given him as to the task he should perform, or the manner in which he should perform it. There were others engaged in similar work to which he was assigned, and he immediately commenced to do as directed. This work consisted of placing loaded trucks upon a freight elevator, accompanying them on their way in the elevator to the sidewalk above, and then pushing the trucks down O'Farrell Street to the new warehouse. The distance from the

floor of the warehouse basement to the sidewalk was from nine to ten feet. The trucks used were wooden ones, about four feet wide by four feet high, with wheels upon them, those in the center at the sides being larger than those at either end. No direction was given to him by any one as to the operation of the elevator machinery. It was operated by pulling a chain, which he observing others do, did likewise. The trucks could not be taken to the sidewalk unless by this elevator. He did not load the trucks himself. They were loaded by others in the warehouse; he simply pushed them to the elevator, took them up on it, wheeled them to the warehouse, and returned with the empty trucks, doing this all the time unassisted until the last trip made by him, during which his injury was sustained. The persons besides himself engaged in handling these trucks consisted of an able-bodied man and two boys, each one attending to a truck. Some of the loads on these trucks were quite heavy. The elevator was an open one without siding on any portion of the platform, and the floor of the elevator platform, which was about four feet square, was made of wood, was rickety, and had patches on it and a piece of iron. On account of the construction of the trucks with higher wheels midway on the sides than on the ends, they tilted to one end when at rest. For this reason it was necessary that some one should accompany the trucks to the sidewalk in order to prevent their rolling off the elevator. Plaintiff worked from a little after eight in the morning till noon, and, thereafter until the time of the injury, about four o'clock in the afternoon, during which period he handled about fifty trucks upon the elevator, no accident happening to his knowledge during that time. As to the immediate circumstances attending the injury plaintiff testified that he started to take a loaded truck up the elevator accompanied by another boy, a little older than himself, named Clark. When a truck was a large one, one boy pushed and the other pulled it upon the elevator. On this occasion Clark pushed and plaintiff pulled the truck, which was a large and rickety one, on the elevator. One of them stood on either side of the truck after it was placed on the elevator, there being between the side of the truck where plaintiff was and the edge of the elevator just space enough for him to stand in, and the height of the truck was such that he could just see

above the top of it. After placing the truck upon the elevator, each held one end of it, and Clark started the elevator on its ascent. At this point, to quote his testimony, he said: "I was holding on to the truck when I was injured. It was a tilted truck that moved up and down. The side wheels were higher than the end wheels. The side of the truck struck my leg, and that is all I know after that. Jerry Clark stood at one end of the truck and I stood at the other. I held on to the bottom of the truck facing the sidewalk—the side; the bottom of the truck. It was necessary to hold on to it because it would bounce and roll off. Movable wheels that would move and revolve like the wheels of a piece of furniture. They would roll all over. For the purpose of maintaining the truck upon the elevator it was necessary to hold on to the truck." Proceeding he further testified that when the elevator was ascending the truck did not stay straight all the time, and when they had gotten about three fourths of the way up the truck moved sideways, the lower part striking against his right foot, pushing it in between the elevator and the sidewalk, where the foot and leg were so badly crushed as to necessitate immediate amputation a few inches below the knee.

It further appeared from plaintiff's evidence that he had never been engaged before in taking loaded trucks up this elevator; that his doing so on the day he was engaged was the first time that he had ever done it; that no one gave him any warning, direction, or instruction as to any danger existing incident to, or to be apprehended in, doing this unaccustomed work; that aside from the order given him by Welk when he reached the warehouse with reference to the work he was required to do, nothing further was said to him by anybody; that Mr. Finck, who it is claimed by defendant had charge of the basement when plaintiff went to work, saw him engaged in taking the trucks to the sidewalk by way of the elevator, but said nothing to him.

This constitutes the evidence on the part of plaintiff, and constitutes practically the entire evidence on his part, and which it is insisted was insufficient to support the verdict.

The general rule of law applicable in cases of the character made by plaintiff is set forth in *Ingerman* v. *Moore*, 90 Cal. 410-421, [27 Pac. 306, 25 Am. St. Rep. 138]. There this

court said: "The principles of law governing this class of actions are clearly defined. It is well settled that one who enters the service of another takes upon himself the ordinary risks of the employment; and if he is an adult, and engages to do a particular work, the employer has a right to presume, unless otherwise informed, that the employee is competent to perform it, and understands and appreciates such risks. But, on the other hand, when one who is known to be an inexperienced person is put to work upon machinery which is dangerous to operate unless with care, and by one familiar with its structure, the employer is bound to give him such instructions as will cause him to fully understand and appreciate the danger attending the employment and the necessity for care. This rule is thus stated by the supreme court of Wisconsin: 'We think that it is now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous, and apparent to a person of capacity and knowledge of the subject, yet if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely with proper care on his part.' "

This rule has been frequently approved in subsequent cases,—among others, *Mullin* v. *California Horsehoe Co.*, 105 Cal. 77, [38 Pac. 535]; *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, [47 Pac. 42, 56 Am. St. Rep. 87]; *Verdelli* v. *Gray's Harbor etc. Co.*, 115 Cal. 517, [47 Pac. 364]; *O'Connor* v. *Golden Gate Woolen Mfg. Co.*, 135 Cal. 543, [67 Pac. 966, 87 Am. St. Rep. 127]; *Mansfield* v. *Eagle Box Company*, 136 Cal. 624, [69 Pac. 425]. These were all actions brought by minors to recover damages for the alleged negligence of their employers, and the doctrine as to liability in such cases was there fully and elaborately discussed, but for the purposes of this case the general rule as above quoted and approved need for the present only be considered.

Now, examining the evidence presented by the plaintiff and applying this rule of law to it. Succinctly stated, this

evidence shows that the plaintiff, a boy of immature years and diminutive size, was taken from his usual occupation as cash boy in one department of defendant's business and ordered to enter upon work in another department to which he was entirely unaccustomed and concerning the proper discharge of which he knew nothing; that this work consisted of taking large loaded trucks which occupied almost the entire floor space of an elevator from the basement to the sidewalk; that the elevator itself which was used for that purpose was rickety and its surface uneven; that the trucks were so constructed as to be liable to shift in transit from their position upon the elevator to the injury of those attending their transportation to the sidewalk; that the elevator was without sides which might protect the operator from having his limbs thrust between the elevator and the sidewalk by the sudden movement of the trucks; that the work to which he was assigned involving the use by him of the trucks and elevator was attended with hazard and dangers of which the defendant was advised; that the plaintiff was entirely inexperienced in the discharge of this character of work; that he was set to the task of doing it in the presence of the dangers which surrounded it, and of which he was unadvised, without any warning or direction whatever as to the risks of injury to which he was subjecting himself.

As the evidence on the part of plaintiff sustained these facts, it must be assumed in support of the verdict, that the jury so found; that they found that the injury sustained by plaintiff was the result of the hazardous employment in which he was placed by his employer while inexperienced and without any warning of such danger and without fault on his part. So finding, under the rule of law we have referred to, the employer was liable in damages for the injury sustained.

It is, however, insisted by defendant that it was incumbent upon the plaintiff, claiming his injury to have resulted from being put to a hazardous employment, to show that he was ignorant of the dangers, and it is insisted that the evidence of plaintiff himself proves that he was not. This latter contention is based on the testimony of plaintiff. On his cross-examination he testified as follows: "On the day of the accident I knew that there was small room between the sidewalk

and the elevator. There was half an inch between the elevator when it got up in place, and the frame that surrounded it and the street. I knew that on the day of the accident, before the accident occurred. The form of the truck and the relative size of the wheels and the relative length and width of the truck I knew on the morning of that day and before I went on the elevator the last time. I did not know that they had those trucks before that day. I knew that when I went up the elevator the last time that if I had my foot and my heel projecting beyond the end of the elevator floor, then when the elevator went up my foot was likely to get hurt. I had experience and intelligence enough to understand that.'' This evidence, however, only proves that he knew if he projected his foot beyond the elevator he would get injured. It was not evidence that he knew and appreciated the fact that the truck he was taking up in the elevator might by reason of its size and construction or its position on the elevator list to the side and push his foot beyond the elevator floor. He might have had knowledge that the truck might move, but it does not necessarily follow that he appreciated the dangers which might result therefrom. Plaintiff might have had knowledge of the liability of the truck to move and strike him without, on account of his inexperience and youth, having sufficient judgment to appreciate the dangers arising from it. It was one thing for him to have known that the truck would shift, but another thing to have sufficient judgment to apprehend any dangers from it. If from youth or inexperience, or both combined, he did not appreciate the peril in which such shifting might place him, he is not deemed in law to have assumed the risk of injury so as to relieve the defendant from any liability in placing him there without warning. And in order that he might not only know but appreciate these dangers he was entitled to be particularly cautioned and instructed by the defendant concerning them. The rule is that ''The master must warn such young servants against the dangers to which their employment exposes them, and he must put this warning in such plain language as to be sure that they understand it and appreciate the danger.'' (1 Shearman & Redfield on Negligence, 4th ed., sec. 219.) The duty of the defendant when it placed plaintiff to work was to have given particular instructions to

him as to the peculiar dangers which might be anticipated, so that, having them in mind and appreciating them, he might perform his work in safety. If particular danger was to be apprehended from there being but very little space for plaintiff's occupancy on the elevator with the truck on it, and the absence of sideguards, or special danger of the moving of the trucks on account of the rickety condition of the elevator or uneven condition of its floor, or that the trucks, on account of the manner of their construction, were liable to shift from their position while being raised to the sidewalk and strike him, it was the duty of the defendant to have given the plaintiff warning that such particular dangers were to be looked out for. The warnings or instructions must be commensurate with the dangers. If special dangers are incident to the employment, particular instructions pointing out those dangers must be given, so that they may be known and appreciated by a minor employee. The very fact that no warning is given to a child or inexperienced person would naturally lead him to infer, or at least to proceed to carry out the orders of his employer, on the assumption that no danger was to be apprehended.

It is true that where a minor is shown to have known of the special dangers attending work to which he has been assigned, and has sufficient intelligence and judgment to appreciate them, the employer will not be held liable for any injury sustained by him during such work resulting from dangers which he knew and appreciated. Under such circumstances, as in the case of an adult, he will be held to have assumed the risk of injury. The law, however, does not expect or exact from a child of tender years the same maturity of judgment or the same degree of care, caution, or circumspection that it does from an adult, and whether in a given case a minor employee is shown to have had knowledge and an appreciation of the dangers incident to his employment is (except in cases where the evidence unquestionably demonstrates that he did) a question of fact to be determined by the jury. The rule upon this entire subject is declared in *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, 190 et seq. [47 Pac. 42, 56 Am. St. Rep. 87], where the court was considering the conduct of a boy, nearly two years older than this plaintiff, who had been called to perform a service outside

of the line of his office or employment and was injured. The court said:—

"Where the ordinary and usual occupation of a minor is the running or management of a machine, or is some employment in and about it, and the minor is shown to have knowledge of the working of the machine, its dangers or its defects, and where it further appears that the minor is not of such tender years as to be unable to appreciate the nature of the dangers or defects, it is beyond question the rule, sanctioned by a long line of authority, that he takes upon himself, as will an adult under the same circumstances, the perils and risks of his employment; and that, if injured in the course thereof, he may not look to his employer for compensation.

"But there is a distinction which, as a matter of humanity as well as law, should be drawn between such cases and those where the minor is put to a task which, while within the range of his employment, is to him in his inexperience and youth unusual and strange; and it is a case of the latter kind · which we are here called upon to consider. Had the accident to the boy occurred while he was engaged in the ordinary operation of his machine, it could be said without hesitation that knowing the peculiar danger to which he might be exposed by its sudden starting, and knowing as he did that it was liable thus suddenly to start, he continued in his employment, taking upon himself the responsibility for any accident which might result therefrom.

"But the accident did not occur while he was engaged in his ordinary occupation at the machine. It occurred while he was engaged in the unusual task set him, that of screwing on a fallen bolt. It is true that while engaged in this task he had still the knowledge that the machine was liable to start; but does this fact establish that for which appellant contends, viz.: That he had assumed that particular risk while screwing on the nut, as he had assumed it generally in operating the machine?

"We think that as a proposition of law this cannot be said. Were the employee in this case an adult, the rule might well be different; but the very reason why an adult under these circumstances would be held to have taken the risk while screwing on the nut, serves to show the injustice and hardship which would result if it were sought to be applied to a

minor. The question of the taking of a risk, the question of the assumption of responsibility of a given act, is determined as much upon the matter of judgment as upon the matter of knowledge. An adult employee, when the facts are known to him, is presumed in law to exercise the same judgment upon those facts as would the employer. . . . The conduct of the child, however, is and should be viewed and measured by a different rule. Children are taught obedience. They are taught not to oppose their will and their judgment to those in authority over them; but in addition to this, and more important than all, the judgment of the child is the last faculty developed. Knowledge he may have; facts he may acquire, but the ability to apply his knowledge or to reason upon his facts comes to him later in life. . . . The very accidents of childhood come from thoughtlessness and carelessness, which are but other words for absence of judgment.

"When sent out to labor they are told by their parents or guardians to obey. In the factory or shop unquestioning obedience is expected and exacted. They must go where they are sent; they must do as they are told.

"It would be barbarous to hold them to the same accountability as is held the adult employee who is an independent free agent. Their conduct is to be judged in accordance with the limited knowledge, experience, and judgment which they possess when called upon to act. And it must, from the nature of the case, be a question of fact for the jury rather than of law for the court, to say whether or not, in the performance of a given task, the child duly exercised such judgment as he possessed, taking into consideration his years, his experience, and his ability. This must necessarily give rise to a different rule from that so well established, which measures the conduct of the adult by that which might be expected of the ordinarily prudent person placed in the same position.

"So here the child might well be expected to comprehend the likelihood of accident, and to know how to provide against it, when engaged in his usual employment in front of the machine. But when he is sent to the rear of it, and in among the wheels and mechanism to perform a novel duty, we cannot say, as a matter of law, that he entered upon its performance with a full appreciation of the increased dangers and risks, and with sufficient judgment to know how to

avoid them. These matters, and the further question whether the minor duly exercised such judgment as he possessed, must, therefore, as a rule, be left as considerations of fact for the jury's determination; and it would be an exceptional case which would present them as unmixed questions of law for the determination of the court. . . . The ordinary care which a child of limited judgment and experience is called upon to exercise in a given act is not the same *quantum* of care which the adult would be called upon to use under the same circumstances. Each is required to use ordinary care, but the amount of care which the person of perfected intelligence and judgment must employ, is very different from the amount which the law in its humanity exacts of a minor.''

We make these extended quotations from this authority to show that in order to relieve the defendant here from liability it must not only appear that the plaintiff had knowledge that the trucks he was engaged in transporting from the basement to the sidewalk were liable to shift or move, but also that he had sufficient judgment to appreciate the dangers of such movements, and that, whether he did or not, was a question of fact for the jury. In the case at bar the questions whether the plaintiff had knowledge and appreciation of the dangers were matters to be determined by the jury from all the facts in the case, taking into consideration the youth of plaintiff, his inexperience and the work to which he was assigned, the particular character of the dangers attending it, and the failure of defendant to give him any warnings or instructions concerning them. If, therefore, it be conceded that plaintiff had knowledge of the dangers, as appellant claims he had, it cannot be said that under the evidence the jury were not warranted in finding, as they must necessarily have found under the instructions of the court, that plaintiff, by reason of his tender years and inexperience and unadvised of the dangers, was not possessed of sufficient judgment to appreciate them.

Passing now to the next point. It is contended that the plaintiff used the elevator contrary to plain precautionary signs upon it warning him to keep off. These signs, it is claimed, read ''No person allowed to ride on this elevator. This means you.'' And ''Keep off this elevator. Dangerous.''

Plaintiff claims that he could not read these signs because they were indistinct, but whether he could have read them, or whether he did read them, is, in our judgment, of no consequence. Counsel presses this point under a claim that it was the duty of the employee to put the truck on the elevator, start it up, and then walk up the stairway to the sidewalk. The jury gave no credit to this contention, and the weight of the evidence was against it. These signs undoubtedly were intended to keep persons from using the elevator for their personal convenience and when no freight was being taken up upon it. The evidence shows that it was the custom of employees removing freight to the sidewalk to ride up with it on the elevator. Aside from this, however, the warning could not apply to plaintiff because his direction to take the loaded truck to the new warehouse involved the use of this elevator as the only means of getting it to the sidewalk. All the men employed there were doing so. Mr. Welk, who directed him to take the trucks over, saw him using it, as did Mr. Finck, the president. Under these circumstances, to whomsoever the warning might otherwise apply, it was not intended to apply to plaintiff while engaged in transporting the trucks to the sidewalk by means of it.

It is further insisted that there was no proof that any one in authority gave plaintiff directions to carry goods by the elevator.

It is certain from the evidence, however, that the plaintiff left his place of employment in the store as cash boy to work in the old warehouse of the defendant in transporting the trucks to the new warehouse, and that he spent nearly all day in doing so, having during that period moved some fifty truck loads. It is extremely improbable that plaintiff should be thus found working in a department of the general business of defendant different and removed from the one in which he was employed, and at an obviously harder task than his usual employment entailed, without having been so directed by some one in authority. He claims he was directly instructed to go to work by Mr. Welk. It is claimed, however, that Mr. Welk had no authority to employ him. The evidence shows that Mr. Welk was in charge of the old warehouse on the day plaintiff reported there; that the business being done there was the transportation of the stock on trucks to the new warehouse,

and that Mr. Welk was actually engaged in attending to and superintending its removal. From these facts the jury would be warranted in finding that at least on that occasion and for the purpose in which it was engaged he represented the defendant. But assuming he did not, still the evidence shows that Mr. Litzius, the secretary of defendant, sent over to the store for another boy to work in the old warehouse; that in response to this request Mr. Weir, who was in charge of the toy department and under whose control plaintiff was, directed him to go to the old warehouse to work there. That when he got there he was immediately instructed by Mr. Welk, who was then actually in charge, what to do, and proceeded to do it; that while at work handling trucks by way of the elevator, he was seen doing this work by Mr. Finck, president of the corporation, who testified that on that day he had charge of the old warehouse. Proof of these facts was sufficient to warrant the jury in finding that plaintiff was properly and regularly employed there on the day in question.

This disposes of all of the points made by appellant as to the insufficiency of the evidence to justify the verdict. We have not discussed the merits of the motion for a nonsuit, as the points which were made thereon, in as far as they are pertinent, have been considered under the specifications of insufficiency of the evidence in the motion for a new trial. In discussing in his brief the ruling of the trial court upon his motion for a nonsuit counsel for appellant attacks the sufficiency of the complaint. He insists that in as far as it attempts to state a cause of action for injury sustained by plaintiff growing out of being placed in a hazardous employment without warning or instructions, it is fatally defective. Appellant is, however, not entitled to raise that point on this appeal. He could only do so on an appeal from the judgment, and the appeal in this case is only from the order denying the motion for a new trial. (*Martin* v. *Matfield*, 49 Cal. 45; *Moore* v. *Douglas*, 132 Cal. 400, [64 Pac. 705]; *Swift* v. *Occidental etc.*, 141 Cal. 161, [74 Pac. 700]; *Sharp* v. *Bowie*, 142 Cal. 462, [76 Pac. 62].)

The court opened its instructions to the jury with one relating to the legal duty of the employer to provide for his employees a reasonably safe place, and that his failure to do so constituted negligence. It is claimed that this was error be-

cause the instruction was not responsive to any issue. We do not think that this point has any force. The instruction was given as defining the general duty of an employer to his employee, and was immediately followed by a number of instructions relative to the duty of the employer where a minor is directed to perform work which in its nature is hazardous.

Exceptions are taken to other instructions given by the court, and to the refusal of the court to give some instructions tendered by appellant. We have examined the instructions given under appellant's claim of error, but perceive no valid objection to them. Those tendered by appellant which were not given were in the main covered by the instructions given by the court on its own motion, and this was sufficient. It also appears from the record that many of the instructions tendered by appellant and which he claims were not given by the court, were, as a matter of fact, given by it almost *verbatim.* The instructions tendered by it which were refused were properly so.

We have disposed of all the points presented which, in our judgment, require discussion. We find no ground upon which the order appealed from should be disturbed, and it is therefore affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.