[S. F. No. 4903. Department Two.—April 17, 1909.]

# MARGARET QUINN, Respondent, v. ELECTRIC LAUNDRY COMPANY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—INJURY TO INEXPERIENCED SERVANT—INSUFFICIENT GUARD TO MANGLING MACHINE—FAILURE TO INSTRUCT AS TO DANGER.—In an action for injury to the plaintiff as a young and inexperienced servant, from an insufficiently guarded mangling machine, the guard upon which it was the duty of defendant's agent safely to adjust, and which machine the plaintiff was directed to operate without instructions or warning as to the danger, it appearing that experience and skill were required for its proper operation, the defendant was negligent in failing to adjust the guard safely, and in failing to give proper instructions to the plaintiff.

ID.—DUTY OF MASTER AS TO SAFE APPLIANCES—REPRESENTATIVE OF MASTER.—A master owes to his servants the duty to furnish suitable machinery and appliances with which the service is to be performed; to keep them in order and repair, and generally to make such provision for the safety of employees as will reasonably protect them against the dangers incident to their employment; and if the act be one which it is the duty of the employer to perform, and one of the servants negligently performs it to the injury of another servant in the same common employment, then the offending servant, in the performance of this duty, acts as the representative or agent of his employer, and the employer is responsible.

ID.—DUTY TO INSTRUCT INEXPERIENCED SERVANT.—When one who is known to be an inexperienced servant is put to work upon machinery which is dangerous to operate unless with care, and by one familiar with its structure, the employer is bound to give such instructions as will enable him fully to understand and appreciate the danger attending the employment and the necessity for care.

ID.—PLAINTIFF'S KNOWLEDGE AND APPRECIATION OF DANGER—QUESTIONS FOR JURY.—The questions whether the plaintiff had knowledge and appreciation of the danger were matters to be determined by the jury from all the facts in the case, taking into consideration the youth and inexperience of the plaintiff, and the work to which plaintiff was assigned, the particular character of the dangers attending it, and the failure of defendant to give her any warnings or instructions concerning them; and even if the plaintiff had knowledge of danger, it cannot be said that under the evidence the jury were not warranted in finding that plaintiff, by reason of youth and inexperience, and not being warned of the dangers, was not possessed of sufficient judgment to appreciate them.

ID.—SERVANT'S ASSUMPTION OF RISKS—CHANGE OF EMPLOYMENT BY
ORDER OF MASTER.—A servant's implied assumption of risks, which
accompanies and is part of a contract of hiring, is confined to that
particular work and class of work for which the servant is em-
ployed; and if the master orders the servant to work temporarily
in another department of the general business where the work is of
such a different nature and character that it cannot be said to be
within the scope of the employment, and where he is associated with
other employees, the servant will not, by obeying such orders, as
matter of law, necessarily assume the risks incident to the work,
unless the same is shown by explicit and uncontradicted evidence.

ID.—SUFFICIENCY OF COMPLAINT — OPERATION OF INSUFFICIENTLY
GUARDED MACHINE—AVERMENT OF KNOWLEDGE NOT REQUIRED.—
When the plaintiff's complaint avers that defendant operated the
machine while it was insufficiently provided with guards, such aver-
ment is equivalent to an allegation of negligence; and it was not
required to aver that defendant knew of the defect of which
plaintiff complained.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

H. W. Hutton, for Respondent.

MELVIN, J.—This is an action for damages by a young
woman, employed by defendant corporation, who was severely
injured while operating a mangle in defendant's laundry.
Judgment for twenty-five hundred dollars was given in favor
of plaintiff. From the judgment and from the order denying
a new trial this appeal is prosecuted.

It is alleged in the complaint that plaintiff, who was about
nineteen years of age, was wholly unfamiliar with the opera-
tion of machinery; that she had been engaged by defendant
as a "shaker out," and that as such she was required to shake
garments and prepare them for the mangling machine; that
after working for some time in the capacity in which she was
hired, plaintiff was ordered by defendant to work at the
mangle; that she knew nothing of the perils attending such
work; that defendant did not warn her of the dangerous char-

acter of the machine, but advised her that it was safe; and that plaintiff went to work upon said mangling machine about the twentieth day of August, 1902, and continued thereat until the seventeenth day of September, 1902, upon which day being engaged in operating the said machine, without fault on her part, and by reason of the defective and dangerous character of said steam mangling machine, her left hand became caught in the mechanism thereof. It is also alleged in the complaint that the mangling machine in question was "defective and out of repair and unsafe in this, that it had not sufficient guards thereon to prevent the person who was operating the same from becoming entangled therein, and in further having a defective guard thereon, which was insufficient when in repair, the said guard consisting of a sheet of tin, which was there placed for the purpose of preventing its operator from becoming caught in said machine and the working parts thereof, but which was not of sufficient strength, and was further defective in this, that it was loose and was not attached to the said machine, it having been formerly screwed on the said machine, but the said screws had been removed, so that the said tin guard was loose and ineffective, and of no use whatever; the said mangling machine with a proper guard thereon being dangerous to any person, who might operate the same, in this, that any person engaged in operating such machine either with or without such guards as might be placed thereon was liable to become caught therein and injured."

The front of the machine where the young woman was working at the time of the accident was provided with a long piece of curved brass over which the clothes were passed in "feeding" them into the mangle. There was some evidence that some screws were out of one end of this appliance, and in one part of her testimony plaintiff said this attachment "kept coming up and down all the time and it must have got caught in the machine and with that it drew my hand right in the mangle." On cross-examination she testified that she could not tell whether this brass contrivance moved very much or not, but that it had moved considerably when she was at work a short time before. In addition to the brass attachment mentioned there was an adjustable guard regulating the size

of the opening through which the pieces of clothing were introduced into the space between the rollers of the mangle. It was shown that when this guard needed attention report would be made by the head girl at the mangle to the foreman of the department, who would report to the manager and get the latter's consent to the guard being raised or lowered. Upon such report, the engineer would regulate the space between the edge of this guard and the place where the clothing entered the mangle. Some of the witnesses testified that on occasions report was made directly to the engineer, who would thereupon fix the guard. There is a conflict in this regard, but all of the witnesses agree that the girls themselves never raised or lowered the guard. Some of the witnesses testified that one fourth of an inch was sufficient space for the passage of sheets —the kind of pieces being ironed at the time of the accident— and it was shown that the guard was so adjusted when plaintiff was injured as to leave a space of one inch.

Appellant contends that the evidence wholly fails to prove negligence on the part of defendant because the condition of the curved brass attachment was not shown to have contributed to the accident; because the adjustment of the height of the guard is not the duty of the defendant but the operator at the machine; and because, according to the allegations and proof, no guard will insure absolute safety. We think the evidence is insufficient to show that the condition of the curved brass appliance contributed to the injury, but we cannot agree with the conclusion that the machine, being dangerous with or without guards, the manner of the adjustment of the guard could not, in any event, be material to the determination of the question whether or not defendant was negligent. If it was the duty of defendant to keep this guard in proper position in order that the danger might not be obviated entirely but materially lessened, then the failure to perform such duty would be as reprehensible as the neglect with reference to some safety appliance which might be attached to a piece of mechanism in such manner as to exclude all danger of accident. It is certain that one's fingers would pass more easily through a space one inch wide than through an aperture but one fourth of an inch in width. But appellant maintains that the adjustment of this guard was not a duty devolving upon the owner

of the mangle, but upon the operator, citing *Helling* v. *Schindler*, 145 Cal. 303, [78 Pac. 710] ; *Towne* v. *United Electric etc. Co.*, 146 Cal. 766, [81 Pac. 124] ; *Leishman* v. *Union Iron Works*, 148 Cal. 274, [113 Am. St. Rep. 332, 83 Pac. 30]. The first of these cases was one in which the plaintiff had been injured while using a planing machine fitted with dull knives. He was a skilled workman and knew better than his employer when the knives required filing. The second was a case in which an experienced lineman was injured by the breaking of a pike pole set up by a fellow workman; and the last was one in which a moulder was hurt by an explosion caused either by the careless work done in preparing a mould, or by the use of a rusty plate which it was his duty or that of a fellow workman to clean with the materials furnished in abundance by the employer.

It appears from the testimony that the sole duty of the girls working at the mangle was the proper introduction of clothes into the machine. They had nothing to do with the adjustment, except to report when there was necessity for raising or lowering the guard. This case comes within the rule stated in *Skelton* v. *Pacific Lumber Co.*, 140 Cal. 511, [74 Pac. 14), where this language was used: "The duties which a master owes to his servants, and which duties he must perform, are to furnish suitable machinery and appliances with which the service is to be performed, to keep them in order and repair, to exercise ordinary care in the selection and retention of sufficient and competent servants, and generally to make such provision for the safety of employees as will reasonably protect them against the dangers incident to their employment; and if the act be one which it was the duty of the employer to perform, and one of the servants negligently performs it to the injury of another servant in the same common employment, then the offending servant in the performance of this duty acts as the representative or agent of his employer, and the employer is responsible."

It is to be remembered that the plaintiff was a girl about eighteen years of age who knew nothing of machinery. She had been employed in the laundry less than three months. For seven or eight weeks of that time she had been engaged in shaking out clothes and for about two weeks in catching

ironed clothing after it had passed through the mangle. Occasionally, when one of the other girls was absent temporarily, she would work for a time at the front of the mangling machine, putting in small garments. She had been given very little experience in guiding sheets into the mangle. According to the testimony of witness Keeney: "It is more difficult to feed sheets into that machine than it is towels, pillow cases and things of that kind, and it required more experience. The machine runs faster when you are feeding sheets than when you are feeding other things." This same witness said: "It takes experience to run that machine, and if no one told me how to run it I would expect to get into trouble." Witness Johnson also declared: "It takes experience to run the machine and knowledge of the machine." That some skill is required in the operation of such a mangle appears from the testimony of Torre, who said: "There is a certain way of keeping your fingers out of the machine. The guard is there to protect your getting your hand in this way. I cannot very well explain it—when you feed a sheet through, you run your hand up against the guard this way, so that you won't stick your hand into the machine, or against the roller. That is what the guard is for." Torre also testified that when the sheets were being put through the mangle plaintiff's place was at the receiving end of the machine. He denied that he had ordered her to take a place at the front of the mangle the morning of the accident. There is no claim made by him that he ever gave Margaret Quinn any instruction with reference to the class of work she was performing when she got hurt. She testified, however, "No one ever told me anything about the mangle or explained it to me, or told me that I was liable to get caught in it. I never had any experience around that machine, or any other, and had not fed sheets prior to that time. I was caught in feeding the second sheet." On cross-examination she modified this last statement somewhat, but the substance of her testimony was that she had enjoyed but very slight experience in putting sheets through the mangle. It is the avowed belief of plaintiff's counsel that the evidence indicates that Miss Quinn could not have known whether the guard was fixed at a proper height or not. The theory of appellant, however, is that the dangers were so apparent to

even the least experienced person that any one working at the mangle must have observed and understood them and must have assumed all of the risks incident to the employment. That the brass attachment, the guard, and the large rollers were in plain sight appears from the uncontradicted testimony, but the small roller against which the sheets were first drawn was not visible from the position occupied by plaintiff at the time she was injured, and plaintiff says she knew nothing of its existence. It would seem that the position and function of this roller at least should have been fully explained by defendant to any person who was directed to guide clothes into this ponderous machine.

I think that this case, from the youth and inexperience of plaintiff, the dangerous character of the mechanism whereby she was injured and the manner in which Miss Quinn was put to work comes clearly within the rule announced in *Verdelli* v. *Gray's Harbor etc. Co.*, 115 Cal. 523, [47 Pac. 365, 778], where, quoting from *Ingerman* v. *Moore,* 90 Cal. 410, [25 Am. St. Rep. 138, 27 Pac. 306], this court says: "But, on the other hand, when one who is known to be an inexperienced person is put to work upon machinery which is dangerous to operate unless with care, and by one familiar with its structure, the employer is bound to give him such instructions as will cause him to fully understand and appreciate the danger attending the employment, and the necessity for care." (See, also, *Mullin* v. *California Horseshoe Co.*, 105 Cal. 77, [38 Pac. 535] ; *Ryan* v. *Los Angeles etc. Co.*, 112 Cal. 244, [44 Pac. 471] ; *Foley* v. *California Horseshoe Co.*, 115 Cal. 184, [56 Am. St. Rep. 87, 47 Pac. 42] ; *Jenson* v. *Will & Fink,* 150 Cal. 398, [89 Pac. 113].) In the case last cited the following language, thoroughly applicable here, is used: "In the case at bar the questions whether the plaintiff had knowledge and appreciation of the dangers were matters to be determined by the jury from all the facts in the case, taking into consideration the youth of plaintiff, his inexperience and the work to which he was assigned, the particular character of the dangers attending it, and the failure of defendant to give him any warnings or instructions concerning them. If, therefore, it be conceded that plaintiff had knowledge of the dangers, as appellant claims he had, it cannot be said that under the evidence the

jury were not warranted in finding, as they must necessarily have found under the instructions of the court, that plaintiff, by reason of his tender years and inexperience and unadvised of the dangers, was not possessed of sufficient judgment to appreciate them."

We think that in the case at bar there was ample evidence to justify the submission of the question of negligence to the jury. Such question is peculiarly theirs to answer. (*Buchel* v. *Gray Bros.,* 115 Cal. 421, [47 Pac. 112].)

There is some conflict of authority in the various states with reference to cases of the kind here considered. It would not be profitable to review all of them here, but we do think it perhaps important to comment upon *Burke* v. *Davis,* 191 Mass. 20, [114 Am. St. Rep. 591, 76 N. E. 1039], for that is a case upon which appellant lays considerable emphasis. That case is easily distinguishable from this, because the plaintiff, as the court found "upon her own statement, was fully aware of the risk she ran in working upon this machine, and for that reason was reluctant to work upon it." It is by no means the law in Massachusetts that an operator at a mangle is presumed knowingly to take all risks incident to that employment, for in *Manning* v. *Excelsior Laundry Co.,* 189 Mass. 231, [75 N. E. 254] (a case cited and distinguished in *Burke* v. *Davis,* 191 Mass. 20, [114 Am. St. Rep. 591, 76 N. E. 1039]), the rule with reference to an ignorant and uninstructed operative is thus given: "There is nothing to show that the machine was defective and the questions are whether the risk was an obvious one which the plaintiff in the first case assumed, and, if not, whether the defendant negligently failed to warn and instruct her regarding the danger; and that depends on whether it was a part of her duty, or whether she was warranted in understanding that it was a part of her duty to remove pieces which caught on the rollers. She must, of course, be held to have understood and appreciated those facts of common experience which a girl of her age would be naturally expected to have become familiar with. She must be held to have known, for instance, that if her hand came in contact with the cylinder, which she knew was hot, it would be likely to be burned. (*Gaudet* v. *Stansfield,* 182 Mass. 451, [65 N. E. 850].) But

it is a different question whether she should be held to have understood and appreciated the risk which there was that her hand might be drawn in between the roller and the cylinder if she attempted to remove a piece from one of the rollers. The rate at which the machine was revolving, and which one of the witnesses testified was very rapid, naturally would have a great deal to do with the likelihood of getting her hand drawn in, and there is nothing to show that she understood or appreciated how fast the machine was revolving. She had seen others remove pieces from the rollers when the machine was in operation, and had received no instructions or warning as to the danger, and might naturally have supposed that the act was attended with no particular risk or it would not have been allowed. Taking her youth and inexperience into account, we do not see how it could have been ruled as matter of law, that the risk was an obvious one which she must be held to have assumed."

The case nearest to this in its facts of any called to our attention is *Stager* v. *Troy Laundry*, first reported in 38 Or. 480, [63 Pac. 645], and after reversal on account of an erroneous instruction and retrial, appearing again in 41 Or. 141, [68 Pac. 405]. In the former report, after a review of the facts which are very similar to those presented by the record before us here, the supreme court of Oregon uses this language: "Under these conditions, we cannot say, as a matter of law, that she assumed the risk by accepting or continuing in the service, and the question was properly left to the jury for their determination."

Appellant complains of this instruction: "A servant's implied assumption of risks, which accompanies and is a part of a contract of hiring, is confined to that particular work and class of work for which he is employed; and if the master orders him to work temporarily in another department of the general business where the work is of such a different nature and character that it cannot be said to be within the scope of the employment, and where he is associated with a different class of employees, he will not, by obeying such orders, necessarily thereby assume the risks incident to the work; and in a case involving the principle here declared, it will not be held, as a matter of law, that the injured party assumed the risk,

unless the evidence is clear, explicit and uncontradicted to that point." It is admitted that the above language was approved by this court as a part of the charge in *Daubert* v. *Western Meat Co.*, 135 Cal. 147, [67 Pac. 133], but the contention is that the final paragraph is so ambiguous as to require amplification. We think the words "to that point" refer to the assumption of the risk, and, while the instruction might have perhaps been improved by adding the language of appellant's brief, "The instruction relates to the assumption of risks on the knowledge or want of knowledge of the injured employee," we do not believe that the jury could have been misled by the omission of such qualification, because the court in another part of the charge gave a correct instruction upon the responsibility of a servant who undertakes any hazardous employment with full knowledge of its dangers.

Another contention is that the complaint does not state facts sufficient to constitute a cause of action because it lacks an allegation that defendant knew of the defect of which plaintiff complained. It is averred, however, that defendant operated the machine while it was insufficiently provided with guards. This is equivalent to an allegation of negligence. (*Silveira* v. *Iverson*, 125 Cal. 266, [57 Pac. 996].)

We find no other matters in the record requiring special attention, and, for the reasons above set forth, the judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.