Singer v. Swartz, 22 N. M. 84.

---

[No. 1803, May 1, 1916.]
[On Motion for Rehearing, August 10, 1916.]
SINGER v. SWARTZ.

SYLLABUS BY THE COURT.

1. The master owes the duty to the servant to exercise reasonable care and diligence to furnish him a safe place to work, as well as safe instrumentalities with which to do the work.                                          P. 85

2. Under the circumstances of this case, **held**, that it was the duty of the master to adjust the safety roller on the laundry mangle so as to minimize the danger of injury to the operators thereof.                              P. 86

3. The servant assumes all the ordinary risks incident to employment, but not the extraordinary risks, unless he knew and appreciated the same.                           P. 88

4. Where the evidence is of such a character that the proper inference to be drawn from it, as to the assumption of risk by the servant, is a question with respect to which different opinion may not unreasonably be formed, whether the servant assumed the risk or not is a question for the jury.
                                                       P. 89

5.   Where the servant is a person of immature years, the cases in which the court may instruct the jury as a matter of law that the servant assumed the risk is much more limited than in cases where the servant is a person of mature years.

P. 89

Appeal from District Court, Curry County; John T. McClure, Judge.

Action by Lena Singer, a minor, by J. H. Singer, her father and next friend, against W. F. Swartz. From a judgment for plaintiff, defendant appeals. Affirmed.

H. D. TERRELL of Silver City, for appellant.

HARRY L. PATTON and A. W. HOCKENHULL, both of Clovis, for appellee.

### OPINION OF THE COURT.

PARKER, J.—This is an action brought in the district court of Curry county by Lena Singer, a minor, by her father as next friend, against W. F. Swartz, to recover compensation for injuries alleged to have been received by her while operating a power-driven steam mangle in the laundry of appellant.

[1]   Thirteen errors are assigned by appellant, the first and most important of which involves the law of assumption of risk. Appellant contends that at the time of the accident the appellee was a bright and intelligent girl; that she had previously been employed in the laundry business; that she was sui juris, and knew and appreciated that in the event her hands or fingers passed into the mechanism of the mangle she would sustain severe injuries, and therefore she assumed the risk attendant upon the operation of said machine. A motion for a directed verdict on this ground was made by appellant at the close of appellee's case in chief, which was denied by the court.

As a general rule, it may be stated that among the primary duties of the master is the duty to exercise reason-

able care and diligence to furnish the servant with a safe place to work, as well with safe instrumentalities with which to do the work. 1 Bailey, Personal Injuries (2d ed.) § 66 et seq.; 2 Cooley on Torts, p. 1102. In 3 Labatt's Master & Servant, § 898, it is said that the duties of the master arise out of the contract of employment, and are limited to the implications arising therefrom, viz., to see that suitable instrumentalities are provided, which includes servants, machinery, apparatus, premises, etc., and to see that those instrumentalities are safely used. At section 902 of the same work and volume it is said that there is no exception to the said rule, and that when a case is made showing the existence of the master's culpability with respect to those duties, which duties are cast upon the master by virtue of the policy of the law, a prima facie right to indemnity exists in favor of the servant. Therefore the first question to be determined is whether or not the master has committed an act amounting to negligence with regard to these primary duties. Dressler, Employer's Liability, §§ 82, 83.

[2]   The complaint alleges negligence on the part of the appellant: First, in failing to provide a cut-off switch at a place where it might be used by one actually operating the mangle; and, second, in failing to adjust the safety roller on the machine. The first charge of negligence has been disposed of by the jury, which found that appellant was not culpable in that respect. The machine referred to is a large power-driven machine, used and built principally for the purpose of ironing clothing. It consists of four metal revolving rollers, attached to either side of a metal frame. The rollers are padded with fabric, and they revolve over a metal ironing table of concave shape, which is heated by means of steam pipes. The machine was equipped with a wooden roller, called a safety roller, placed in front of the first metal revolving roller, which was adjustable and was intended to minimize the danger of injury in the actual operation of said machine. On the day of this accident the safety roller was so adjusted that it hung about an inch and a half above the ironing table. While appellee was feeding a thin dresser

scarf into the machine, her fingers passed beneath this safety roller, and her hand was drawn into the mechanism of the machine and severely injured. Her injuries are permanent. At this time she was between 13 and 14 years of age, and had worked for appellant in his laundry in 1911 irregularly for about a month, and regularly thereafter for about six weeks prior to the day the accident befell her. She had operated the mangle at different times, but was not a mangle girl, as appellant characterizes her, but a general employé of the plant. She testified that she knew she would be injured should her hands or fingers pass into the mechanism of the machine, but that she never realized the exceptional danger in operating the machine, nor had she ever been instructed concerning its operation or the exceptional dangers attendant thereon. She admitted that the wife of appellant had told her to be careful when operating the machine, but that this was the extent of warning she had received. The conclusion reached from the evidence of the appellee's case is that, had the safety roller been properly adjusted on this occasion, appellee would not have sustained injury. The appellee testified that she had never adjusted the safety roller, nor had she ever seen it adjusted by any one else, and that, while she never particularly noticed its location, she believed that it was in the same condition at the time of the accident that it had been since she had worked for appellant. While it does not affirmatively appear in the case made by appellee that the duty of adjusting the safety roller was upon appellant, it is a fact, appearing in the case made by appellant, that he considered it his duty to keep this roller in proper condition. However, it makes but little difference as to this, because the law required appellant to keep this roller adjusted as long as it remained a part of the machine. Thus, in Stager v. Troy Laundry Co., 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459, the court said that, the appellant having furnished an appliance on a mangle for the protection of the operator (a guard plate), it was the duty of the master to see that it was properly adjusted, citing Woods v. Railroad Co., 11 App. Div. 16,

42 N. Y. Supp. 140. See, also, Quinn v. Electric Laundry Co., 155 Cal. 500, 101 Pac. 794, 796, 17 Ann. Cas. 1100. Under the facts of this case failure to adjust the safety roller constituted actionable negligence on the part of the appellant.

[3] The next question is, Did appellee assume the risk of operating this machine when the safety roller was improperly adjusted? Every risk which the employment still involves after the master has done everything he is bound to do is assumed by the servant if the latter knew and appreciated the same. 3 Labatt's Master and Servant (2d ed.) § 895. The section last referred to, together with sections 894 and 1169, indicates that wherever the risk is caused by the negligence of the master, the same is not an ordinary one, but an extraordinary one, and as a general rule such risk is not assumed by the servant, because the assumption of such risks was not contemplated by the contract of employment; the contract of employment impliedly providing that only those risks which naturally attend the employment after the master has fulfilled his implied duties should be assumed by the servant. See, also, 2 Bailey, Per. Inj. § 373; 2 Cooley on Torts, p. 1102; Dressler, Employer's Liability, § 88. But the doctrine of assumption of risk has been referred to in cases decided by this court. In Van Kirk v. Butler, 19 N. M. 597, 145 Pac. 129, this court, speaking through Mr. Justice Hanna, said:

"An 'extraordinary risk,' in the sense in which we use this term, is not one which is uncommon or unusual, in the sense that it is rare, but is one that arises out of unusual conditions, not resulting in the ordinary course of the business, as, by reason of the master's negligence."

Tested by the rule last quoted and what is contained in the text hereinabove referred to, the risk involved in this case occasioned by the negligence of the master in failing to properly adjust the safety roller, was an extraordinary one, and, in the absence of certain other facts, such risk was not assumed. The general rule being that extraordinary risks are not assumed by the servant for the reasons stated, the qualification or exception thereto

should be noted, viz., that such risks are assumed if the servant knew and comprehended the same. In Thayer v. D. & R. G. R. R. Co., 21 N. M. 330, 154 Pac. 691, this court held that the servant assumes all the ordinary risks incident to the service, but not the extraordinary risks, save in those cases where such risks were known to and comprehended by the servant. Appellant argues that the danger of operating this mangle machine was actually known to and appreciated by the servant, the appellee, and that she admits as much. All that she admits, or all that may be inferred from her testimony, is what any truthful person of any understanding would readily admit, that she knew she would sustain serious injury in the event her hands or fingers passed into the mechanism of the machine, which manifestly a child of even tender years might well know and understand. She does not admit that she knew of the master's negligence, or that the danger in operating the machine was greater because of the negligence of appellant than it otherwise would be. As a matter of fact, it appears that she did not even know the function performed by the safety roller, nor had she any knowledge whatever of mechanics. She had seen the safety roller, but had not particularly noticed its location on the machine. We are satisfied that she cannot be held to have had actual knowledge, as a matter of fact, of this added or increased danger, but if such knowledge should be imputed to her as a matter of law, it amounts to the same thing in the end. There is no presumption that a servant knows and appreciates the extraordinary risks of the service (3 Labatt's Master & Servant, § 1201), unless, perchance, the circumstances are such as to charge her with full knowledge thereof, in which event the question becomes one of law, rather than fact. 2 Bailey, Per. Inj. § 388. In the first instance the burden of showing that the servant assumed the risk is upon the master. See Thayer v. D. & R. G. R. R. Co., supra.               ,

[4, 5] Are the facts of this case of such a character that the court as a matter of law ought to charge appellee with constructive knowledge and comprehension

of this risk? 3 Labatt's Master & Servant, § 1182. In the work and volume last mentioned, at section 1179, it is said:

"It follows that assumption of an extraordinary risk cannot be predicated, as a matter of law, where there is no evidence going to show that the servant understood, or ought to have understood, that risk, or where the evidence actually produced is fairly susceptible of the construction that he did not understand it."

In the case of Crawford v. Western Clay Co., 20 N. M. 555-559, 151 Pac. 238, this court held that where the evidence is of such a character that the proper inference to be drawn from it, as to the assumption of risk by the servant, is a question with respect to which different opinions may not unreasonably be formed, it must be submitted to the jury, and not determined as a question of law by the court. But where the servant is a minor, or, as some of the cases say, a person of immature years, the cases in which the court may instruct the jury that the servant assumed the risk, as a matter of law, is much more limited than where the servant was of mature years. In 4 Labatt's Master & Servant, § 1317, the doctrine is thus summarized:

"Speaking more generally and without reference to the particular class of risks, it may be said that the fact of minority increases, to a greater or less extent, the probability that his faculties of observation and comprehension are more limited than those of the typical person of ordinary intelligence, whose supposed capacity for appreciating dangers furnishes the juridical standard by which the existence or absence of obligatory knowledge is tested. The obvious effect of this consideration, when viewed in relation to the common-law system of jury trials, is that the range of circumstances under which obligatory knowledge can be imputed, as a matter of law, is more restricted in cases where the injured person was a minor than in those where he was of full age, at the time when the cause of action arose. In this respect the element of minority operates in precisely the same manner as that of inexperience. The hypothesis is that a minor is inferior to an adult as respects both the ability to obtain material information and the ability to draw deductions from such information as may be obtained. But an examination of the decisions collated in the next section shows very clearly that it is the latter description of inferiority which is most frequently the real dif-

ferentiating factors in the case. That is to say, the inference that the danger created by certain conditions, as well as the conditions themselves, was known to the servant is less readily drawn where he is a minor than where he is an adult."

In Stager v. Troy Laundry Co., 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459, the plaintiff was injured by a mangle. The guard plate installed on the machine was out of adjustment. It was shown that the rules of the defendant company prohibited employés from adjusting the plate. On account of the improper adjustment plaintiff was injured, and defendant asserted that the risk was obvious, and that the plaintiff assumed the same. In effect the court held that if the servant knows that proper precautions for his safety have been neglected by the master and knowingly consents to expose himself to those dangers, his assent dispenses with the duty of the master to take such precautions, and he assumes all risk, and this because of negligence on his part which proximately contributes to the injury. But it was held in that case that one does not assume the risk because he knows there is some danger connected with the employment. The court then remarked that the different adjustments of the guard plate created different degrees of danger, and that under the circumstances of that case, which are much like those in the case at bar, it could not say, as a matter of law, that plaintiff assumed the risk, and the not, was a question of fact for the jury.

In Larsen v. Bloemer, 156 Cal. 752, 106 Pac. 62, the plaintiff was injured in a laundry. She had never been instructed with reference to the dangers of the mangle, and the court held that whether she assumed the risk or not, was the question of fact for the jury.

In Bromberg v. Evans Laundry Co., 134 Iowa, 38, 111 N. W. 417, plaintiff's hand was caught in a mangle and injured. Being but 18 years of age, the court held that such person is presumptively incapable of appreciating the danger of the employment, and did not assume the risk thereof unless the employer affirmatively showed that she had sufficient capacity to appreciate the risk.

These cases are cited for the purpose of showing how several of the courts have treated this question, and not because we regard them as strictly in point. The law concerning the assumption of risk is well settled. Its application to a given state of facts is the difficult task. See 2 Bailey, Per. Inj. p. 1015. Whether as a matter of law the risk was assumed depends entirely on the facts of each case, and therefore precedent is of little avail. In the case at bar we cannot say that this 13-year-old girl should have comprehended the extraordinary risk caused by the negligence of the master in failing to properly .adjust the safety roller. We cannot say that the evidence shows that she was more intelligent than any other girl or boy of the same age. Certainly it appears that she did not possess the understanding of an ordinarily prudent adult person. But in view of the fact that the evidence is in such a state that different opinions may not unreasonably be drawn from it as to whether the servant knew and comprehended the extraordinary risk, we believe the court committed no error in submitting the case to the jury. Much might be said with respect to the duty of the master to warn and instruct servants of immature years, but the application of the principles hereinabove announced makes such discussion .unnecessary.

The case made by appellant was to the general effect that appellee had been properly instructed with reference to the mechanical working of the machine; that she had been properly and fully warned concerning the danger in operating it; that appellee was a capable worker; that appellee admitted that the cause of the accident was her own carelessness; that the safety roll adjustment at the time of the injury was reasonably safe; and that the duty of adjusting the safety roller was upon the master or the foreman, but sometimes the girls would adjust it. The motion for a directed verdict, made at the close of appellee's case, was renewed by appellant at the close of the rebuttal by appellee, which was denied by the court. Appellant's second point, and the only other one we need notice in this case, is that the motion

for a verdict non obstante verdicto should have been granted. The argument is based upon the findings of the jury in the form of answers to interrogatories propounded to it. The answers to the special interrogatories were to the general effect that appellee was possessed of the same degree of intelligence and brightness ordinarily possessed by girls of her age; that she knew that the cylinders revolved over a heated iron surface; that she well knew that if her hand was caught in the mechanism of the machine, she would be injured, and that she ought to have known such fact; that the plaintiff was instructed how to operate the mangle; that she was indirectly warned that if her hand was caught in the mechanism of the mangle, she would be injured. The answers to the special interrogatories submitted by appellee were to the general effect that the appellee did not know and fully appreciate the dangers incident to her employment, and that appellant was negligent in failing to properly adjust the guard roll. The answers are not contrary to the verdict, and a discussion of the reasons, therefore, is unnecessary, in view of the fact that appellant's main argument is based upon the fact that appellee knew her hands would be injured in the event they passed into the mechanism of the machine, which question, so far as it concerns the doctrine of assumption of risk, we have disposed of in the first point herein. The judgment of the trial court is therefore affirmed; and it is so ordered.

ROBERTS, C. J., and HANNA, J., concur.

### ON MOTION FOR REHEARING.

PARKER, J.—The court in this case held, among other things, that under the facts and circumstances the master was negligent in failing to see to it that the safety roller on the mangle was in proper adjustment at the time the appellee was injured. The appellant's principal objection to this holding is that, as the safety roller had to be adjusted in the course of the use of the mangle, the duty of adjusting it rested upon the servant, and not upon the master; hence the master cannot be held to have

been negligent in this regard. The doctrine of law for which appellant contends, cited in 4 Labatt's Master & Servant, § 1544, is well established, but whether it is applicable or not depends upon the facts of this case. The controlling consideration in the solution of the question must be the method in which the business of the appellant was conducted. If it were a part of the duties of the servant to adjust the safety roller as the occasion arose, then, undoubtedly, the omission to properly adjust the roll would constitute negligence on his part, whereas, if the business was so conducted that the duty of adjusting the roller rested upon the master, its omission would constitute negligence on the latter's part. The facts presented in the case made by the appellant affirmatively show that the duty of adjusting the safety roller rested entirely upon the master or his foreman, the vice principal, except in occasional instances when the older employés assumed the duty of adjusting it. Such being the case, the omission to adjust the roller in this instance constituted negligence on the part of the master, the appellant, and the doctrine for which he contends has no application. Supporting this view are the three cases cited by us in the former opinion: Woods v. Long Island R. Co., 11 App. Div. 16, 42 N. Y. Supp. 140, 142; Stager v. Troy Laundry Co., 38 Or. 480, 63 Pac. 645, 53 L. R. A. 459, 461; Quinn v. Electric Laundry Co., 155 Cal. 500, 101 Pac. 794, 795, 17 Ann. Cas. 1100.

The motion for rehearing will therefore be denied; and it is so ordered.

ROBERTS, C.J., and HANNA, J., concur.